# Bethlehem Borough *versus* Perseverance Fire Co.

1. An unincorporated fire company having property was incorporated, to be located in Bethlehem, the charter declaring the object to be " the protection of the property of our fellow-citizens from fire :" *Held*, that it was not for the private gain of its members; the property acquired in aid of the object was for charitable uses.

2. The stat. of 43 Eliz., c. 4 (Charitable Uses), is not extended to Pennsylvania; its principles are in force here by common usage.

3. The principles of the Statute of Elizabeth are stronger as to corporations than to unincorporated associations; the duty of the courts of this state to supervise them being required by the Act of June 19th 1836.

4. By subscriptions obtained by the company from citizens of Bethlehem, by entertainments, &c., the corporation acquired personal property in aid of its objects : *Held*, that they had the legal title, but held it in trust for the uses for which the corporation was created, and they could not divest it of the trust or divert it from its general purpose.

5. It might in good faith dispose of any specific articles, using the proceeds for other apparatus, &c., to be used for the purposes of its charter.

6. The trust inheres in the property into whatever form it may be changed ; the proceeds cannot be divided amongst its members.

7. The right of a borough under Act of April 3d 1851 (General Borough Act), to make regulations as to fires and appropriate money to fire companies and engines for the borough, does not empower the authorities to take from the possession of an incorporated company fire apparatus not owned by the borough.

8. A borough may purchase and own fire apparatus, and take possession of it and control it, or may give money to a company to assist them in purchasing.

9. Whatever is given to a fire company is given to be used by it for the object declared in its charter, and the rights of the cestui que trusts must be protected by the courts.

10. The company is the legal custodian of the property and is entitled to notice and hearing before its rights are impaired.

11. A legal dissolution of a corporation is to be effected by proceedings under the Act of April 9th 1856, sect. 1, relating to corporations, and cannot be by an irregular assemblage of a portion of its members without notice, resolving to disband.

12. A temporary non-user of its property by the company did not divest the rights.

13. A fire company had acquired property ; the borough purchased a steam-engine and put it into their charge ; upon a disagreement with the

[Bethlehem Borough *v.* Perseverance Fire Co..]

authorities, a number of members of the company assembled without notice and resolved to disband ; the authorities, assuming that they had disbanded, took possession of the property and delivered it to a company of a portion of the same members and assuming to act under the same charter. *Held,* that the act of the authorities was illegal ; they had no right to the possession of the property.

14. An action of assumpsit waiving the tort could not be maintained against the borough for the value of the property.

15. Assumpsit can be maintained only where there is a contract express or implied ; it will not lie for a chattel illegally detained.

16. The plaintiff cannot waive the tort and recover the value of the goods, unless the defendant has sold them and received the money, or has taken them for the purpose of sale and there be no evidence to rebut the presumption of sale and the receipt of the money.

17. When goods are sent to one who refuses to receive them and professing to return them substitutes spurious articles, the owner may waive the tort and recover the price in an action for money had and received, but not for goods sold and delivered.

18. When one tortiously in possession of another's goods converts them, assumpsit for money had and received may be maintained.

March 20th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Northampton county :* Of July Term 1875, No. 56.

This was an action of assumpsit, brought July 7th 1873 by the Perseverance Fire Company, No. 1, against the Burgess and Council of the borough of Bethlehem.

The declaration was in the common counts.

The bill of particulars furnished, on demand of the defendants, was for $1150, money paid by plaintiffs for the use of defendants in the purchase of a steam fire engine ; $500, the value of a hand fire engine ; $900, the value of a hose carriage ; $700, the value of a pair of horses ; $50, the value of two sets of harness ; $500, "the value of certain furniture, equipments, &c., all which foregoing articles were the property of the plaintiffs and were unlawfully taken from their possession by the defendants, and converted to the use of the defendants."

The plaintiffs afterwards filed an "amended bill of particulars," for $1000, money lent by plaintiffs to the defendants ; $150, money paid, &c., by plaintiffs for defendants' use ; "also to recover the value, with interest, of the articles and property specified in the schedule hereto annexed, which said articles and property were unlawfully, forcibly and tortiously taken from the possession of the plaintiffs, whose property they were, by the defendants, and converted by the defendants to defendants' own use."

The schedule specified the articles mentioned in the first bill of particulars, and also specified the articles of "furniture, equipments, &c.," with the value affixed to each article ; the whole amounted to $3907.20.

The defendants filed two pleas in abatement, the substance of

[Bethlehem Borough *v.* Perseverance Fire Co.]

which was, that prior to July 3d 1873, the plaintiffs were a corporation liable under the ordinances of the defendants to be disbanded, and that by an unanimous vote of their members the plaintiffs disbanded and so officially announced to the defendants, who ratified. the same on the 4th of July, and invited the original corporators and members of the corporation and others to effect a re-organization ; and that the plaintiffs were neither members nor corporators of Perseverance Fire Company, No. 1, nor in anywise connected with it ; the name, privileges, franchises, &c., of Perseverance Fire Company, No. 1, were all vested in the re-organization, which was alone recognised as that company in the " Bethlehem Fire Department," and the plaintiffs were, therefore, incapable of bringing suit.

The counsel of the parties afterwards agreed that the defendants might, under pleas in bar, give in evidence any matters which could be taken advantage of under a plea in abatement or any special plea whatever, without prejudice to the defendants to have the whole merits of their defence passed on by the jury.

The defendants afterward pleaded " Non assumpsit and payment, with leave, &c."

Prior to 1843, the real estate in Bethlehem belonged to the Moravian Society.    They owned also a very old hand-engine, which had become useless and had passed as a relic into the hands of an unincorporated fire association (the nucleus of the plaintiffs' company), in Bethlehem.    The possession of this engine, although it was not included in the property alleged to have been taken by defendants, appears to have been the occasion of this controversy.

Bethlehem was not then incorporated ; it was incorporated in 1849.    By the act of incorporation the authorities had power to organize as many fire companies as there should be engines belonging to the borough, and to assess, and apportion, raise and appropriate such taxes as might be necessary for carrying their rules, ordinances and regulations into effect.

Afterwards the borough came under the General Borough Law of April 3d 1851 (Pamph. L. 320, 1 Br. Purd. 167).    The 18th paragraph of the 1st section of the act provides that boroughs shall have power " to make regulations relative to the cause and management of fires, and within such limits within the borough as they may deem proper to prescribe ; and to authorize the borough authorities to appropriate money for the purchase of fire-engines for the use of said boroughs and to fire companies."

Subsequently the members of the fire company applied to the Court of Common Pleas of Northampton county to be incorporated. Their petition set out that they were " associated for the purpose of forming a fire-engine and hose company, and prayed to be erected into a corporation," to be situated in the borough of Bethlehem. * * *

[Bethlehem Borough *v.* Perseverance Fire Co.]

The preamble of their constitution submitted with the petition, stated that " We having formed ourselves into a fire company under the name of ' The Perseverance Fire Company, No. 1,' having for our object the protection of the property of our fellow citizens from fire, do agree to accept the following constitution," &c.

There was no provision in the constitution for the dissolution of the corporation.

On the 6th of October 1853, the court made the decree of incorporation.

On the 1st of March 1869, the council of the borough purchased a steam fire-engine for the use of the Perseverance Company " for the sum of $4000;" of this sum the plaintiffs alleged that they had paid $1000, which was one of the specifications in their bill of particulars. Council subsequently bought another steam fire-engine for the use of the Reliance Company. Subsequently, on being informed by these companies that they were about to disband, from inability to meet their expenses, the council resolved to pay all necessary expenses for keeping the engines and their houses in order, &c. Council afterward sold two hand-engines belonging to these companies for $600.

On the 5th of July 1872, the council passed an ordinance constituting " The Bethlehem Fire Department," consisting of the several companies within the borough; they were to elect a chief engineer; each company to elect from their members an assistant engineer subject to the approval of the town council; the chief engineer to remove any of the assistants by a resolution passed by two-thirds vote of the council; and by a like vote the council could remove the chief engineer. The chief engineer was to have full control of all the fire apparatus; he and the assistants were to constitute a board of engineers who should have power to expel or fine any member of any of the companies for improper conduct as specified in the ordinance; and should one-fourth of any company be guilty of such improper conduct, the engineer might suspend the company or fine each member of such company, and for a second offence, disband the company; the fines to be collected by suit before the burgess as other municipal fines were collected.

There were other ordinances and resolutions in relation to the control of the fire department by the borough authorities.

At a special meeting of the town council, held on the morning of the 3d of July 1873, the burgess stated that the object of the meeting was, " that as the Perseverance Fire Company had refused to give up the old engine as per resolution passed at a meeting of the Water Board, to be placed in the room of the Young Men's Missionary Society of Bethlehem for safe keeping, and that sundry threats had been given as to the destroying the old engine, &c.; he asked the council to take action on the matter." A resolution was then passed, directing the old engine to be given to the museum com-

mittee of the Young Men's Missionary Society, in trust for safe keeping until otherwise ordered, and that the police force, with the members of council, should proceed to the Perseverance engine-house and remove the old engine, and if any resistance should be offered, the police should proceed according to law. The chief engineer was instructed to call a meeting of the engine company and examine into the difficulty about the old engine and other misconduct; the burgess was directed to place policemen on the premises day and night till the difficulty be arranged; it was resolved also, that if the old engine could not be removed peaceably it should be removed by force.

The case was tried May 11th 1875, before Meyer, P. J.

J. N. Edwards, a member of the plaintiffs, testified, that on the 3d of July 1873, the town council and police officers came to the engine-house and removed the old hand-engine; when the trustees of the company became aware of this they had interviews with some of the members, and about 9 o'clock in the evening there were assembled at the engine-house about twenty-six of the members. The president called the meeting to order, and said "the insult offered to us would be considered; * * * then they wanted to disband and became noisy; I said to the foreman that I would make a test vote on the question, and as soon as the question was taken he should move to adjourn; the motion that a test vote on the question be taken was by rising, no count was taken on account of the confusion." A committee was appointed to see if the Reliance Company would disband. Some business was transacted as to what the company would do if they disbanded; a committee was appointed to take an inventory, because they thought the borough would take the property. The company did not disband that night; the meeting was not regularly organized; each member was to have a written notice twenty-four hours before a special meeting; the president stated that the object was to see about taking away the old engine and about disbanding the company. The company claimed to own the old engine.

He testified that the articles contained in the inventory—the same as those in the bills of particulars—belonged to the company; a hand-engine (not the relic) was sold without the assent of the company after the steamer was bought, the company interposed no objections; they were not consulted; the company had previously wanted to sell, the council did not like it and it was dropped; the money for the horses was raised by voluntary subscriptions taken by the company from citizens of Bethlehem, and by a ball. The horses were taken by the borough officers July 4th.

J. A. Fries testified that the company paid $1000 to the chairman of the Borough Finance Committee, and he paid that and $1000 of the borough's money to the manufacturer for the steam

[Bethlehem Borough *v.* Perseverance Fire Co.]

fire-engine ; the $1000 paid by the company were the proceeds of a "Gift Enterprise," which they had conducted.

H. Yost testified that the high constable of the borough took possession of the engine-house, and locked out the members of the company ; that members of the town council were with him.

Schitz, the high constable, testified, that with other police officers he went, by order of the council, to the engine-house, on the morning of July 3d 1873 ; the members of the council were with them ; he went in, got the key, and locked the door ; after the members of the company went out, he put the dead-latch down so that it could not be opened with a key ; and, by order of the council, he kept the key in his possession ; one of the police took the horses away.   He was not ordered to take away anything else.

There was evidence that the lot on which the engine-house was erected belonged to the borough ; that the building was erected by the company.

There was evidence also, that the company had paid for the hose-carriage; the money which paid for it was raised by subscriptions obtained by the company from the citizens of Bethlehem.

There was evidence also, that the goods in the engine-house continued there after the borough officers took possession of it.

The defendants gave evidence by Otto Brunner, that on the 3d of July there was a company re-organized.   On the 4th a number of the members of the original company, at the request of members of the town council, met the council at the rooms with respect to the organization of a company to take charge of the Perseverance fire-engine, that the old company had disbanded—"to take charge of the general apparatus."   The members of the old company who were at this conference organized the company ; a number of the former members joined ; a number of other citizens offered to organize with them there ; a general meeting was called for the 8th ; there was a meeting on that day, and a committee appointed to frame a constitution and by-laws ; the company was fully organized in that month, and a committee appointed to notify the council to hand them the property in trust ; that was done, and the company took charge of it and attended to their duties ever since.

Another witness testified, when they went to the engine-house on July 4th, there were a number of the members of the old organization there ; that one of them pointed to some property which they claimed, and said that they had nothing to do with the balance ; that the new organization had had most of the property in dispute in their charge ever since ; none of the original members had ever made a demand for the property.

The chief engineer testified, that he was at the meeting on the night of July 3d ; there was much excitement and noise, so much so that the vote on disbanding could not be taken.   After much speak-

ing and efforts to take the vote, witness, as chief engineer, said that they should decide the question of disbanding one way or the other ; he wished to make his report to the council ; after that a vote was taken, " and they all jumped up and unanimously hallooed to disband." They then resolved to dispose of their horns, &c., and to appoint a committee to procure a room to store things belonging to the company. Witness reported to council on the 4th, that he had gone to the engine-house to call a meeting as he was ordered, and found that they had called a meeting themselves, and had unanimously resolved to disband. The old hand-engine was taken away July 3d ; all the fire apparatus of the borough was transferred to another company. The old hand-engine was taken without the consent of the company—that was what made the disturbance.

There was evidence that the council never offered to restore the property.

There was much other evidence—bearing on the question of disbandment—the ownership and value of the property ; the taking possession of it by the borough authorities, and whether they had permission of the company to do so, &c.

The plaintiffs, in rebuttal, gave evidence that no notice had been given of the holding of the meeting on July 3d.

The following are points of the plaintiffs, with their answers:—

2. There are no facts given in evidence in this case which suffice to show that the plaintiffs were ever legally dissolved or disbanded as a corporation, or that they had lost or forfeited their right to hold and retain the property which they had acquired, and for the recovery of the value of which this action was brought.

Affirmed.

7. The legal title to the two horses held by the plaintiffs and taken by the defendants was in the plaintiffs at the time they were taken.

8. The money with which the said horses were purchased was the money of the plaintiffs, no portion of it having been furnished or contributed by the defendants, and the circumstance that a portion of it was contributed upon a representation by Samuel Mack, the collecting agent, that the horses when purchased should be used for the protection from fires of the citizens of Bethlehem, or should belong to the borough, would not suffice to divest the legal title of the plaintiffs in the horses.

Answer : " If the jury find the fact from the evidence that the money with which the two horses were purchased was contributed in part by the plaintiffs and the residue by the citizens of the borough of Bethlehem, and paid over to the plaintiffs, then the legal title to said horses was in the plaintiffs, and subject to this qualification the seventh and eighth points are affirmed."

10. By virtue of the payment of the said alleged sum of

[Bethlehem Borough *v.* Perseverance Fire Co.]

$1000 to the owners of the said steam fire-engine as a part of the purchase-money thereof, the plaintiffs, in absence of any agreement, by mere operation of law, became the owners of an undivided interest as tenants in common in the said steam fire-engine, in the proportion which the said sum of money paid bore to the whole purchase-money of the engine.

13. The declarations of a few of the members of the Perseverance Fire Company on the night of July 3d 1873, and on the next day, to the effect that the company had disbanded and that they, the said members, would not turn out at fires, would not, even if believed by the jury, as testified by the defendants' witnesses, suffice either to work a dissolution or accomplish the disbandment of the plaintiffs.

Both these points were affirmed.

The following are points of defendants and were all negatived:—

1. The engines, hose-carriage. and other apparatus for the extinguishment of fires, held by a fire company, which have been paid for by money subscribed directly or indirectly by the citizens of a town, or raised by taxation, are held by such fire company in trust for the citizens of such town, subject to the control of the constituted authorities of such municipality, and such fire company has no title to sell the same.

2. Whenever the borough, in the exercise of a reasonable discretion on their part, saw proper to give over the custody of the fire-engine and other fire apparatus to another company than the plaintiffs, organized to extinguish fires, such action gave the plaintiffs no title to recover the value of such property from the borough.

3. If the jury believed that the association of men known as the Perseverance Fire Company, No. 1, "on the 3d and 4th of July 1873, agreed to disband, and either neglected or refused to attend to their duties as firemen, the borough authorities had the lawful right to take posession of the engine, horses and other apparatus and to deliver them to another company organized to take the place of the disbanded company.

5. If the jury believe the borough council in good faith acted upon the official report of the chief engineer that the plaintiffs' company had disbanded, and the plaintiffs having received information of such action gave no notice to council, in a reasonable time, that they had not disbanded, and made no request for the return to their care of the fire apparatus, that no action can be maintained to recover its value.

6. The bringing of the suit by the plaintiffs, on the 7th of July 1873, which was before the organization of the new company, and before the delivery to such new company of the fire apparatus, without notice to the borough council that they had not disbanded, ratified the action of the council in treating the company as dis-

[Bethlehem Borough *v.* Perseverance Fire Co.]

banded, and justified the borough authorities in delivering the property to the new company, and the plaintiffs therefore cannot recover.

7. There was neither an express nor an implied contract on the part of the borough to pay the plaintiffs the value of the fire apparatus and other property, and the plaintiffs therefore cannot recover.

8. There is no evidence that the borough took any of the property of the plaintiffs and converted it to their own use, so as to entitle the plaintiffs to recover in trover, and that the plaintiffs, therefore, waiving the tort, cannot recover in assumpsit.

10. If plaintiffs were a fire company in the fire department of Bethlehem, and acquiesced in an ordinance entitled "An ordinance relative to chief engineer, assistants and fire department," passed July 5th 1872, and an ordinance entitled "An ordinance authorizing a uniform badge for the fire department of the borough of Bethlehem," passed July 5th 1872, by assisting in the choice of a chief engineer and wearing the department badge, and plaintiffs voluntarily disbanding themselves, they are in the same position as if they had been disbanded by council under section 8 of the first of said ordinances, and their reinstatement is a matter altogether "in the option of the council."

12. There is no evidence that the payment of the sum of $1000 upon the steam-engine was a loan to the borough, and even if the jury believe there was a promise by the borough that the plaintiffs should have an interest to that extent in the engine, no recovery can be had in this action for the sum so paid, as the plaintiffs have failed to show that the borough has ever sold the engine or applied it to other uses than those for which it was originally purchased.

In the general charge, the court said :—

* * * "It is contended by the defendants that the plaintiffs mistook their remedy; that they ought to have gone into a court of equity or by mandamus raised the question as to the title to and right of possession by the plaintiffs of the property in question, under their charter of incorporation, as well as the right of the defendants under their charter, the general borough laws, and their ordinances. I endeavored to satisfy myself that the *sole* remedy in this case is a court of equity or by mandamus, but in the absence of an express authority on that point, I am compelled to apply the general rule of the common law respecting the rights of property and the remedy to enforce these rights, and therefore hold and so charge you, [that while there might have been a concurrent remedy in a court of equity or by mandamus, yet these plaintiffs, if they had the legal title to the property, which they allege the defendants took and retained possession thereof, forcibly and without their consent, and under circumstances which would entitle

[Bethlehem Borough *v.* Perseverance Fire Co.]

them to recover against a stranger, they had a right to have and maintain a common-law action against these defendants.]

" In this form of action, in ordinary cases, where one person receives the money of another, or where he receives such money, which in good conscience he has no right to retain, or where a person lays out and expends money for the use of another, at his request, either express or implied, the law implies a promise to pay the money so received, laid out and expended. * * *

" First. It is contended on the part of the plaintiffs that if the jury find from the evidence that they were the lawful owners of the property mentioned in the bill of particulars, and that the defendants forcibly and without plaintiffs' consent took out of their possession this property and retained it, that they have the right to waive the tort, and recover the value of the same with interest in this form of action under the count for money had and received. We say to you that such is the law, and it is immaterial whether you find that they held such property absolutely or in trust for the uses and purposes provided for by their charter. * * * If, therefore, you find that any property included in plaintiffs' bill of particulars was in possession of the plaintiffs on the 3d of July 1873, and before bringing of the suit, which was simply loaned to them by said society or some one else; which was never given to them, or which they did not purchase or contribute themselves, then as to such property the plaintiffs did not have title to recover in this form of action. If they only had the lawful possession of such property and it was taken by force and without their consent, they could in an action of trespass recover damages for depriving them of their possession, but they could not recover the value of the property in any form of action.

" What other property was there which belonged exclusively to the plaintiffs and which was in their exclusive possession at the time of the alleged trespass by the defendants, and which was acquired by the plaintiffs in the manner I have already stated ? If you find from the weight of the evidence that they then had such property, that they had it in their exclusive possession and that it was acquired by them in that way, and is included in said bill of particulars, unless something else shall appear in the case, to which I shall call your attention shortly, the plaintiffs would be entitled to recover the value of said property, together with interest, if you find from the weight of the evidence that it was forcibly taken out of their possession by the defendants in their corporate capacity before the bringing of the suit, and either retained it or delivered it over to another company, without the consent and against the will of the plaintiffs. Or if the defendants before the bringing of this suit, obtained possession of said property by the express or implied consent of plaintiffs of their acts and conduct, and the plaintiffs before the bringing of the suit made a demand upon the

[Bethlehem Borough v. Perseverance Fire Co.]

defendants for the same and they refused to deliver it up, the plaintiffs can recover.   But if you cannot find from the weight of the evidence that the property in question was the property of plaintiffs, or if you find that it was their property, but cannot find that this property was taken by the defendants in their corporate capacity by force or by appearance of force or by the exhibition of authority, but that they got possession of the same by the consent express or implied of the plaintiffs, for the purpose of subserving the interest of the people of Bethlehem at that time, and there was no demand made by the plaintiffs upon the defendants to deliver up the same before suit brought, then I say to you that the plaintiffs cannot recover in this case the value of said property ; and I say further to you that the mere bringing of this suit is not such a demand required by law. * * *

"If the defendants sold any property that belonged to the plaintiffs, and appropriated the money, whatever money they received for such property sold, and you find the property belonged to plaintiffs, the defendants, in their action, are bound to pay over the same, and the plaintiffs can recover in this form of action.

[If the plaintiffs lent to the defendants a sum of money to purchase a steamer with, or if they paid this money in the purchase of it, at the request of the defendants, express or implied, and by their conduct afterwards ratified it, then you can find in favor of the plaintiffs the amount of money so paid by them, with interest.]   If they lent it to the defendants, and you find they agreed to pay it back, they can recover that amount as a loan, with interest.   If they paid it for the use of the defendants, either by the express or implied assent of the defendants, or it was afterwards ratified, then the plaintiffs are entitled to receive the amount of money so paid.   [If they paid money in the repair of property belonging to the borough, and it was necessary to be paid to make it efficient for the use of the borough, then we say to you that the plaintiffs can recover for whatever money was paid, as the evidence satisfies you in this case.] * * *

"I may say here, in a general way, that when disbanding is spoken of, you will bear in mind that the disbandment of the company, by which they separated themselves and did not act any more, would not in law constitute a dissolution of the corporation. The corporation still exists, that in one sense is perpetual, unless it is limited by the act creating it, or it may become limited if the parties who have an interest in it go in the courts and seek a dissolution, or if they have committed some acts by which they have forfeited their franchise, and a proper party goes before a proper tribunal and has the corporation dissolved."

The verdict was for the plaintiffs for $2975.14.

The defendants took a writ of error.   They assigned for error,

[Bethlehem Borough v. Perseverance Fire Co.]

1. The answer to plaintiffs' second point.
2. The answers to plaintiffs' seventh and eighth points.
3, 4. The answers to plaintiffs' tenth and thirteenth points.
5-7. The answers to defendants' first, second, and third points.
8-11. The answers to defendants' fifth, sixth, seventh and eighth points.
12. The answer to defendants' tenth point.
13. The answers to defendants' twelfth point.
14-18. The parts of the charge in brackets.

*W. E. Doster* and *E. J. Fox*, for plaintiffs in error.—This was a charity; the plaintiffs held it in trust for the inhabitants of the town and they could not refuse to use it to protect the property of the town from fire: Magill *v.* Brown, Brightly's Rep. 405; Thomas *v.* Ellmaker, 1 Pars. Cas. 107; Attorney General *v.* Heelis, 2 Sim. & St. 67; Witman *v.* Lex, 17 S. & R. 90; Babb *v.* Reed, 5 Rawle 151; Unangst *v.* Shortz, 5 Whart. 519; Church *v.* Remington, 1 Watts 218; Pepper's Will, 1 Pars. Cas. 436; Wright *v.* Linn, 9 Barr 435. Bethlehem being a municipal corporation was the only legal representative of its inhabitants and had in charge whatever related to the public good and the general welfare: 1 Dillon on Mun. Corp. 92, 93. A court of equity had exclusive jurisdiction over this property, as trust property: Thomas *v.* Ellmaker, *supra;* King *v.* Strafford, 3 Term R. 646. The property was trust property; a court of equity has exclusive jurisdiction of it: Act of June 16th 1836, sect. 13, par. 6, Pamph. L. 789, 1 Br. Purd. 590, pl. 1; Foley *v.* Tovey, 4 P. F. Smith 190; Kisor's Appeal, 12 Id. 428; Roshi's Appeal, 19 Id. 467. The payment of the $1000 towards the steam-engine was voluntary and no recovery can be had for it: 2 Comyn on Cont. 151; 1 Pars. on Cont. 304, 305; 2 Kent's Com. 616. There could be no recovery without demand and refusal: 1 Chitty's Pl. 155.

*H. E. Green* (with whom was *W. W. Schuyler*), for defendants in error.—A corporation can be dissolved only by judicial proceedings under the Acts of April 9th 1856, sect. 1, Pamph. L. 293; April 4th 1872, sect. 1, Pamph. L. 40, 1 Br. Purd. 285, pl. 21, 22. A party may waive the tort and recover in assumpsit: McCullough *v.* McCullough, 2 Harris 295; Deysher *v.* Triebel, 14 P. F. Smith 386.

Mr. Justice MERCUR delivered the opinion of the court, May 8th 1876.

Two controlling questions arise under the eighteen assignments of error. The one involves a consideration of the rights of the defendant in the property in question; the other whether it has selected the proper form of action to assert these rights.

[Bethlehem Borough *v.* Perseverance Fire Co.]

The defendant in error was duly incorporated by the Court of Common Pleas of Northampton county on the 6th of October 1853. The company had had an existence and organization as a fire company for some fifty years prior to its incorporation.

The application for the charter avers that "the said corporation is intended to be situated in the borough of Bethlehem" in said county. The charter declares that the incorporators have for their "object, the protection of the property of our fellow-citizens from fire." Thus the sole purpose for which it was incorporated is clearly and distinctly expressed.

Its object was not for the private gain and profit of its members, but for the public benefit. It existed for no other or different purpose. The property which it acquired, in aid of its object, was therefore for charitable uses. While the statute of 43 Eliz., c. 4, of charitable uses, is not extended to Pennsylvania, yet the principles of it as applied by chancery in England, have long been recognised as in force here by common usage : Witman *v.* Lex, 17 S. & R. 90 ; Babb *v.* Reed, 5 Rawle 151 ; Methodist Church *v.* Remington, 1 Watts 218 ; Magill *v.* Brown, C. C. U. S. (Brightly's Rep. 347) ; Thomas *v.* Ellmaker, 1 Pars. Eq. Cas. 98 ; Pepper's Will, Id. 436 ; 7 Johns. Ch. 294 ; Wright *v.* Linn, 9 Barr 435.

In most of these cases, the rule was applied to voluntary associations or unincorporated companies. When applied to incorporated companies the reason is stronger, and the duty of a court of equity under our statute is free fron doubt.

The first section of the Act of 6th April 1791, 3 Sm. Laws 20, authorized the incorporation of citizens of this Commonwealth for "any literary, charitable or religious purposes." Section 1 of the Act of 8th April 1833, Pamph. L. 238, extends the provisions of the previous act to beneficial societies and associations, and to fire-engine and hose companies. Section 2 declares that all corporations established under the foregoing act and all that may hereafter be incorporated under this act shall be able and capable in law to take and hold real and personal estate, "to be employed and disposed of according to the objects, articles, and conditions of the instrument upon which the said corporations respectively are as aforesaid formed or established, or according to the articles and by-laws of said corporations respectively, or of the will and intention of the donors."

The fire apparatus of this company was originally furnished by the Moravian Society, which was the owner of all the real estate in Bethlehem until a few years prior to the incorporation of the company. As additional or improved apparatus was required, it was procured by subscription, or by fairs, concerts, and similar enterprises.

Within the limits of its charter the defendant in error had all the rights of a corporation—it held the legal title to property—yet

it held it in trust for the uses and purposes of its creation, that was for the protection of the property of their fellow-citizens from fire. It had no right to divest the property of that general trust nor to divert it from that general purpose.   The corporation may in good faith dispose of any specific article, using the proceeds thereof in the acquisition of new or improved apparatus, to be used for the purpose mentioned in its charter.   In whatever form the company changes the property, the trust still inheres.   It cannot sell it and divide the proceeds among its members.

The company held its property subject to the supervisory power of a court of equity.   By the 13th section of the Act of 16th June 1836, the Supreme Court and the several Courts of Common Pleas are given all the jurisdiction and power of a court of chancery, so far, *inter alia*, as relates "to the supervision and control of all corporations other than those of a municipal character."

It is true among the enumerated powers vested in the corporate officers of a borough by section 2 of the Act of 3d April 1851, Purd. Dig. 168, is one "to make regulations relative to the cause and management of fires," and to "authorize the borough authorities to appropriate money for the purchase of fire-engines for the use of said boroughs and to fire companies."   But a right to make a general regulation relative to the management of fires, gives no right to the borough authorities to take out of the possession of an incorporated company the fire-engines and apparatus which is not owned by the borough.   It is not given to the borough authorities to decide that the company has forfeited all its rights to the possession and custody of the property it holds in trust, and therefore has no rights entitled to respect.   The borough may purchase and own fire-engines or apparatus, or it may appropriate money as a donation to a fire company to assist in their purchase.   What the borough owns herself, she may take possession of and control or sell it.   What an incorporated company owns the borough cannot control in that manner.

In case the contributors to the erection of a church edifice, discover the corporation is not using it according to the trust for which it is held, surely it will not be contended that they on their own motion can go and take adverse possession of the building. The property does not belong to the contributors, but to the corporation, to be used by the corporation according to its charter.

The same principle applies to a fire company.   Whatever may be subscribed or otherwise donated, is given to the corporation to be used by it for the object and purpose declared in its charter.   The rights of *cestuis que trustents* therein must be protected and enforced in and through the courts : Roshi's Appeal, 19 P. F. Smith 462. The fire company is the legal custodian of the property, and is entitled to notice and hearing before its rights shall be impaired. Nor was the corporation deprived of this right by the fact that a

[Bethlehem Borough *v.* Perseverance Fire Co.]

portion of its members assembled without notice and in an irregular manner and favored the disbanding of the company. The action then had was insufficient to work a legal dissolution of the corporation or destroy its rights of property. The first section of the Act of 9th April 1856, Purd. Dig. 285, pl. 21, prescribes the manner in which a corporation may be dissolved on its own petition by the Common Pleas of the proper county. A temporary non-user of the property did not divest the rights of the company therein: Wright *v.* Linn, *supra*; McKissick *v.* Pickle, 4 Harris 148. We conclude therefore that the plaintiff in error has no just cause to complain of the answers of the court in regard to its assumed claim of right to the possession of the property.

The tenth assignment strikes at the form of the action. The declaration was in assumpsit. This action cannot be sustained unless there was an express contract, or the law will imply a contract: 1 Chit. Pl. 99. It does not lie for a chattel illegally detained: Willet *v.* Willet, 3 Watts 277. The plaintiff cannot waive the tort and recover the value of the goods unless the tort feasor has sold the article and received the money: Id.; Gilman *v.* Wilbur, 12 Pick. 120, or where he has taken it as merchandise to market for the purpose of sale and in the absence of any evidence to rebut the presumption of a sale and receipt of the money: McCullough *v.* McCullough, 2 Harris 295. This case was correctly said to be ruled by Longchamp *v.* Kenny, 1 Doug. 132, K. B., but in referring to that case the remarks of Mr. Justice BURNSIDE are calculated to convey a wrong impression as to the extent to which it goes.

The facts of the case were that tickets for a masquerade party had been delivered to each plaintiff and defendant to sell and account for or return after the party. The defendant got possession of one ticket that had been delivered to the plaintiff. On demand the defendant refused to pay for it or to give any satisfactory answer. Thereupon the plaintiff paid for it, and then brought suit against the defendant. The declaration was for money had and received, and for money paid.

In delivering the opinion of the court, Lord Mansfield said, "If he sold the ticket and received the value of it, it was for the plaintiff's use, because the ticket was his. Now as the defendant has not produced the ticket, it is a fair presumption that the defendant had actually received the money for the ticket.

If goods be sent to a merchant who refuses to receive them because they are not such as he ordered, and under pretext of re-delivering them, substitutes spurious articles, and the genuine ones are not returned or accounted for, the owner may waive the tort and recover the price for which they may be presumed to have been sold by the defendant, in an action for money had and received; but not for goods sold and delivered: Gray *v.* Griffith, 10

[Bethlehem Borough *v.* Perseverance Fire Co.]

Watts 431.   When one tortiously, in possession of another's goods converts them into money or securities, assumpsit for money had and received may be maintained.   This suit is governed by equitable principles, and lies only where the defendant *ex æquo et bono* ought to refund the money received : Deysher *v.* Triebel, 14 P. F. Smith 383.   In many cases where the defendant has received goods wrongfully, a contract for the purchase will be inferred and the plaintiff may waive the tort and recover the amount in an action for goods sold and delivered : 1 Leigh's Nisi Prius 91 ; but if there be no unfair dealings or other circumstances from which an implication may arise under such a count a recovery cannot be had of the value of specific articles in the possession of the defendant, claimed as the property of the plaintiff : Deysher *v.* Triebel, *supra.*

Turning to the facts in this case, we find that the borough authorities took possession of the property on the 3d of July 1873, by exercising dominion and control over it.   They retained it in its specific form when this suit was brought, four days thereafter. The possession was not taken fraudulently, but under a claim of right.   No conversion of it into money or securities had taken place.   It was merely detained and held.   No implied contract or receipt of money can be implied.   The whole evidence rebuts any such presumption. ' It follows, therefore, that this assignment only is sustained, and for that reason the judgment must be reversed.

Judgment reversed.