## Clyde Chamberlain, by his Next Friend, Isadore F. Chamberlain, *v.* Joseph M. Lilley, Appellant.

*Master and servant—Overpayment to servant—Fraud on employee by fellow servant.*

If by mistake, a master overpay his servant, any third person cheating the servant out of the amount overpaid is and should be answerable to him. The mistake concerns only the servant and his master and cannot be used as a shield by the wrongdoer.

Where an agent of a railroad company by fraud deprives a coemployee of a portion of his wages paid the latter by mistake, he will not be permitted on suit brought against him by such coemployee to interpose the superior title as a defense. A recovery in this suit will end the agent's liability to the company, unless he has been guilty of fraud on the latter, no notice having been given him by the company to hold the money.

Argued Jan. 13, 1896. Appeal, No. 10, Jan. T., 1896, by defendant, from judgment of C. P. Columbia Co., Sept. T., 1893, No. 85, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit to recover the sum of $145, being the amount of wages paid plaintiff as assistant station agent of the D., L. & W. R. R. Co., and procured by defendant from plaintiff on fraudulent representations. Verdict for plaintiff for $166.25.

The facts are fully set out in the opinion of the Superior Court.

Defendant's points and the answers thereto were as follows :

1. That under all the evidence the plaintiff is not entitled to recover and the verdict must be for the defendant. *Answer :* That point is refused. [1]

2. That under all the evidence the contract with the plaintiff was express for $25.00 per month, and he can recover no extra compensation ; that any surplus drawn by him was paid to him by mistake, and the contract with him inured to the benefit of his principal, and no title to such surplus vested in him ; and that the payment of such surplus to Lilley, if true, was a payment to Lilley for his principal for it, and not to the plaintiff, and therefore the plaintiff cannot recover. *Answer :*

That point is refused. We have already instructed you in reference to that contract and the payment of money to Chamberlain. [2]

3. That the contract in this case was an illegal one, in fraud of the company in law ; and being the foundation of the plaintiff's right of action he cannot recover. *Answer :* That point is refused. We have already instructed you that if the money was paid to the plaintiff without fraud on his part, and if it was taken from him by fraud on the part of Lilley, yet without any fraud or collusion on his own part, then he would be entitled to the money. [3]

4. That if the jury believe that the plaintiff paid to the defendant out of moneys received by him from the company for wages of his services as station clerk the sum of $145 demanded in the suit, and that this sum was paid by the defendant to Duval Dickson, another coclerk with the plaintiff, for aiding the plaintiff in his work aforesaid with the knowledge and consent of the plaintiff, then the jury may find that the plaintiff is estopped from maintaining this action, and may find a verdict in favor of the defendant. *Answer :* That point is affirmed.. We have stated before that if the plaintiff parted with his money voluntarily and understandingly consented to it, then he would be estopped from bringing this action. But if Lilley obtained the money wrongfully from Chamberlain, the fact that he paid it to Dickson—if he paid it to Dickson—without Chamberlain's consent would not estop Chamberlain from recovering it back from Lilley. It does not matter to whom Lilley paid the money, if he obtained it from Chamberlain by fraud and paid it over to anybody without his consent. If Lilley obtained the money from Chamberlain by misrepresentation and deceit after it had become Chamberlain's money and the title had vested in him, the plaintiff would have a right to recover it back from Lilley if the evidence satisfies you that he is so entitled to it and so received it. [4]

Plaintiff's fifth point and the answer thereto were as follows :

That if the jury believe that the railroad company voluntarily paid to the plaintiff $40.00 per month without fraud on the plaintiff's part, and that the defendant by fraud induced the plaintiff to part with any portion of the $40.00 per month, the plaintiff is entitled in this action to recover such portion so

parted with, despite the fact that the original contract with Lilley may have been for only $25.00 per month.; *Answer:* That point we affirm and have already so instructed you. [5]

The court charged the jury inter alia as follows:

[ If the original contract with the company through Lilley was fraudulent upon the part of Lilley and if Chamberlain entered into the fraud, knew of it and consented to it, then he would have no rights to enforce in this court; but the question is for you, Had he knowledge? Did he assent to or agree to anything wrong in reference to it? If he did not, then when he found out that these wages had been paid to him in good faith by the railroad company, he having received them as such, the wages would be his,—he would have a good title to them. You must determine from the evidence in the cause whether he was guilty of any knowledge of fraud or concurred in any fraud practiced upon the railroad company in obtaining these wages at $40.00 per month. If he did not, as there is no dispute that the wages were paid to him, he would have the ownership of them, they would be his—the money paid to him would be his property. [6]

*   *   *   *   *   *   *   *

[If Lilley represented to the railroad company that he had hired Chamberlain for $40.00 per month, and if Chamberlain had no knowledge of any fraud in the matter, Chamberlain would not lose his right to recover in this action because of Lilley's fraud—if Lilley perpetrated any upon the railroad company, unless Chamberlain parted with his wages or any portion of them to Lilley voluntarily, understandingly and without the practice of fraud or imposition upon him by Lilley. Daniel Reedy's testimony, which you will recall, tends to confirm the testimony of Lilley that Chamberlain parted with his money understanding that a portion of it went to Dickson with Chamberlain's knowledge and consent. If it did, then Chamberlain cannot recover it back from Lilley. Whether it did or not is a question for you under the evidence in the case. If you believe that the plaintiff's contract with the company was for only $25.00 per month, and that nevertheless (the contract being for $40.00 per month, as reported by Lilley to the company) $40.00 per month was sent to the plaintiff by the company and paid to him, and not paid to Lilley, then the plaintiff would

be entitled to $40.00 per month, and if it was taken from him by Lilley through fraud or deceit, misrepresentation or falsehood, Chamberlain can recover it back from Lilley in this action, provided you believe the evidence that demand was made before suit brought.] [7]

*Errors assigned* were, (1–5) answers to points, reciting same; (6, 7) portions of charge, reciting same.

*James Scarlet, W. H. Rhawn,* for appellant.—The fiduciary relation prevented plaintiff from obtaining rights or acquiring property antagonistic to his principal: Densmore v. Densmore, 64 Pa. 43; Short v. Stevenson, 63 Pa. 95; Everhart v. Searle, 71 Pa. 256; Moore v. Thompson, 9 Phila. 164; Mathers v. Mathers, 13 S. & R. 258; Bank v. King, 57 Pa. 202; Hindmarch v. Hoffman, 127 Pa. 284.

Lilley knew that, if Chamberlain's statement was the true one, he was bound to hold the money for his principal. If he paid it to Chamberlain back again he would be liable to the company under the authority of Hindmarch v. Hoffman, 127 Pa. 284.

Being an agent of the company, the receipt by him of the money was prima facie the receipt by his principal: Simons v. Vulcan Oil Company, 61 Pa. 202.

He could not convert it to his own use, without committing a crime under the 107th section of the penal code: Commonwealth v. Hill, 2 Pearson, 432.

The error committed is plain: Where the contract is ex turpi causa from the violation of a positive law or of public policy, and the parties are in pari delicto, the courts will not enforce the agreement or give relief to either party, but will leave them as they found them to enjoy the fruits of their own folly: Wood's Master and Servant, sec. 207; Winton v. Freeman, 102 Pa. 366.

In all cases all the parties to an unlawful transaction are presumed to be in pari delicto: Wood's Master and Servant, sec. 207.

The charge of the court was erroneous and misleading: Railroad Co. v. Berry, 68 Pa. 272; Kissinger v. Thompson, 12 S. & R. 44; Tyrrel v. Bank, 2 English Ruling Cases, 517.

*C. R. Buckalew* and *Fred Ikeler*, *Chas. C. Evans* with them, for appellee.—The money paid Chamberlain by the railroad company was paid voluntarily, without mistake or fraud, and consequently Chamberlain's title to the same was perfect: McCrickart v. City, 88 Pa. 133.

Even in a case of money paid under a clear mistake of fact the court held that it could not be recovered back, since the defendant received it in good conscience, without fraud on his part, and was not bound in justice and equity to return it: Taylor v. Commissioners, 3 P. & W. 112.

OPINION BY WICKHAM, J., February 20, 1896:

Joseph M. Lilley, the defendant in the court below and appellant here, had been for many years, prior to April, 1892, agent for the Delaware, Lackawanna & Western Railroad Company, at its station in Berwick. He had for his assistant Duval Dickson. Clyde Chamberlain, the plaintiff below, then a young man, not much over eighteen years old, had been learning telegraphy and, incidentally, railroading, at the station, for some nineteen months.

About the 1st of April, 1892, or perhaps a little earlier, the appellant undertook to employ another assistant. He hired the appellee, telling him that the company would pay only $25.00 a month, which compensation the appellee consented to take. Notwithstanding this arrangement, the appellee's name immediately went on the company's pay roll, in the proper office, as an employee entitled to $40.00 a month, and, from the beginning, he was paid at that rate. The reason for this clearly appears from an examination of the evidence. Nowhere is it shown that the appellant was authorized to fix the appellee's salary, or that he had ever reported any attempt to do so. The circumstances disclosed by the evidence compel the conclusion that some official, nearer the center of corporate power than was an agent at a small way station, had, in accordance with the usual business custom of railroad corporations, determined the compensation that should attach to the new place. No doubt the appellant was authorized to inform any one he employed what the salary would be, but, instead of telling the truth regarding the matter, he deceived the appellee, in order to cheat him later. It may be added, that the company, so

far as the evidence shows, has made no effort, nor exhibited
any intent to take advantage of what was done by its agent
dishonestly, and in seeming excess of his authority.

The employees at Berwick received their wages monthly,
from the pay car. A few days before its first arrival after the
hiring of the appellee, the latter was shown by the appellant a
forged telegram, purporting to be signed by J. W. Fowler, gen-
eral manager of the company, and reading as follows: "Clyde
Chamberlain will draw $40.00 from the pay car and pay J. M.
Lilley fifteen." The character of this pretended telegram would
perhaps have excited, at once, the suspicions of an old and ex-
perienced railroad man, but, as the jury have found, it deceived
the boy of eighteen, holding his first business position, and
doubtless regarding the appellant as his friend and benefactor.

For the first five months of his service the appellee turned
over, monthly, to the appellant, $15.00. At the end of that
time he was informed by the appellant that he (the appellant)
had secured him an increase of $5.00 a month. After that he
paid the appellant only $10.00 monthly until April, 1893, when
the latter told him that he had obtained another increase of
$5.00 a month in his wages. In May, 1893, the appellant,
after having obtained in all $145, from the appellee, ceased to
be the company's agent. About the same time, the appellee,
whose suspicions had been previously aroused, made inquiries,
with the aid of Dickson, and learned that the company had all
along been paying him the $40.00 a month for his own use,
that the Fowler telegram was a forgery, and that the stories
told him by the appellant, to induce him to part with his money,
were false.

The facts, as above stated, are in part necessarily established
by the verdict, and in part by uncontradicted evidence.

At the trial, the appellant alleged that the appellee had
agreed to turn over to him the sums of money received, for
the purpose of paying the same to Dickson, who performed
more work and had more experience than the appellee, and
that the moneys so received were paid over to Dickson pur-
suant to this arrangement.

These allegations were denied by Dickson and the appellee,
and disbelieved by the jury.

Another allegation was that, in law, the money taken from

the appellee belonged to the railroad company, the same having been paid to him through a mistake of fact, and that therefore there could be no recovery.

The learned judge of the court below instructed the jury, that if the appellee's money went with his consent to Dickson, or if he, the appellee, had in any manner participated in, or consented to, any fraud practiced on the railroad company by Lilley, he could not recover. This is all the appellant could fairly ask.

Conceding the appellant's power to fix the appellee's salary, which, in view of the pleadings, we feel bound to do, the appellant is not aided. It may be admitted, without interfering with the appellee's right to recover, that the company paid the money sued for through a mistake of fact induced by the dishonesty of its own agent. The jury have found on sufficient evidence that the money was received by the appellee without any fraud on his part; he, therefore, held it lawfully, subject only to the company's right to reclaim it. It was his as against the whole world, save the company, and would become his absolutely, unless suit were brought for its recovery within the time prescribed by the statute of limitations. The company might or might not choose to insist on its right. No stranger, depriving the appellee of the money by fraud or violence, will be permitted to interpose the superior title as a defense. If, through mistake, I overpay my servant, any third person cheating him out of the amount overpaid is and should be answerable to him. The mistake concerns only my servant and myself, and cannot be used as a shield by the wrongdoer. The appellee here is entitled to recover the money in dispute, if it were paid him by mistake, first, because of his special property therein; and second, to enable him to meet the demand of the absolute owner, if such demand be ever made. A recovery in this suit will end the appellant's liability to the company, unless he has been guilty of fraud on the latter, no notice having been given him by the company to hold the money. On this last proposition and the general subject of the rights of qualified owners, see 9 Bacon's Abr. (Bouvier's Am. ed. 1846) 459, 645, 647, 648; 26 Am. & Eng. Ency. of Law, 744, 751, 761.

The principles, established by the authorities just cited, are usually invoked only in actions of trespass and trover, but as

they are elementary rules of law, founded on justice, common sense and public policy, they are applicable, whatever be the form of action, where personal property has been obtained unjustly, whether by force or fraud. Sometimes a party injured has his choice between assumpsit and trover. If, for instance, the railroad company in this case had paid the appellee with coal instead of money, and, through some mistake of fact, had given him too many tons, and the appellant had fraudulently obtained from the appellee a part or all of the coal so mistakenly delivered, and sold it, he, the appellant, could be sued either in trover or assumpsit: Bethlehem Borough v. Perseverance Fire Ins. Co., 81 Pa. 445.

It is hardly necessary to discuss the appellant's contention that he received the money from the appellee as agent for the railroad company. He had no authority from the company to deprive the appellee of the money, and in so doing he acted solely for himself, and in furtherance of his own ends.

The assignments of error are all overruled.

Judgment affirmed.