## Welsh v. National Dime Bank

*S. L. Gribbin,* for plaintiff.
*Charles C. Lark,* for defendant.

CUMMINGS, P. J., February 26, 1945.—Plaintiff instituted an action of trespass against the defendant,

for the unlawful conversion of a mortgage, the property of the plaintiff.

Plaintiff filed her statement of claim, and the material allegations, insofar as the questions here raised, are inter alia, as follows:

"3. Plaintiff was, on September 21, 1925, the owner and lawfully possessed of a mortgage of the value of $10,000 dollars, recorded in Northumberland County in Mortgage Book 77, page 332, dated June 7, 1912, executed by J. A. Welsh, J. I. Welsh and John O'Gara, to the St. Mary's Trust Company, in the sum of ten thousand ($10,000) dollars, and assigned by the aforesaid St. Mary's Trust Company to the plaintiff, by assignment dated June 18, 1925, and recorded in the county aforesaid in Mortgage Book 118, page 575. The aforesaid mortgage and assignment, by reference thereto are made part hereof.

"4. On September 21, 1925, the said J. A. Welsh, who was the husband of plaintiff, borrowed the sum of $11,500 from the National Bank of Shamokin, Pa., on his note, payable three months after date, and on the same day plaintiff executed an assignment of said mortgage to the aforesaid, the National Bank of Shamokin, as collateral security for said loan. The said assignment was recorded in Northumberland County in Mortgage Book 107, page 424, and by reference thereto made part hereof. Said loan of $11,500 was renewed, without deduction at maturity, and by a series of renewal notes, from time to time until the 22nd day of December, 1927, when the said loan was repaid to the said, the National Bank of Shamokin, by the said J. A. Welsh, as hereinafter set forth.

"9. Plaintiff received no consideration for the aforesaid assignment of mortgage, which was executed and delivered by her to said, the National Bank of Shamokin, Pa., as an accommodation to the said J. A. Welsh, and as collateral for said loan of $11,500, and

for no other purpose, and plaintiff avers she did not authorize or empower the said, the National Bank of Shamokin, Pa., or J. A. Welsh, to pledge or assign said security for the loan of $60,500 made by it as aforesaid to the said J. A. Welsh.

"10. Prior to the death of said J. A. Welsh, plaintiff had no knowledge of the repayment by him of the obligation secured by her said assignment, nor had she any knowledge of the entry of the aforesaid judgment of $60,500 . . . .

"11. Plaintiff avers it was the duty of the said, the National Bank of Shamokin, Pa., upon the repayment of the loan which the aforesaid assignment was given to secure, as hereinbefore averred, to reassign to her the said mortgage, but the said, the National Bank of Shamokin, Pa., on December 22, 1927, contrary to the intent of the plaintiff and her agreement with it, the said, the National Bank of Shamokin, Pa., unlawfully and wrongfully converted the said mortgage to its own use and benefit.

"12. As of December 13, 1932, National Bank of Shamokin, Pa., a corporation organized and existing under the laws of the United States, having its principal office in the Borough of Shamokin, County of Northumberland and State of Pennsylvania, and Dime Trust & Safe Deposit Company, a corporation organized and existing under the laws of Pennsylvania and having its principal office in the Borough of Shamokin, aforesaid, were merged and consolidated under the charter of the National Bank of Shamokin, under the name, style and title of National-Dime Bank of Shamokin, under the provision of the Act of Congress, approved November 7, 1918, as amended February 25, 1927.

"13. By reason of said merger and consolidation, National-Dime Bank of Shamokin has become the corporate successor of National Bank of Shamokin, Pa.,

and as such corporate successor, is entitled to the rights, benefits and privileges and is subject to the obligations of the former National Bank of Shamokin, Pa.

"14. The defendant, on demand of the plaintiff, has refused to execute a reassignment of the aforesaid mortgage and has ever since refused to do so, but has unlawfully converted the same to its own use to the damage of the plaintiff in the sum of ten thousand ($10,000) dollars with interest thereon from December 22, 1927."

Thereupon, defendant filed an affidavit of defense, alleging the following questions of law:

"1. Under the alleged facts set forth in the statement of claim, this action is not sustainable as an action of trespass.

"No copies of the notes evidencing the several loans mentioned and described in plaintiff's statement of claim are attached to or made a part of the statement of claim.

"3. The assignment of the mortgage was made by J. A. Welsh et al., dated June 7, 1912, and recorded in Mortgage Book 77, page 332, in the office of the recorder of deeds in and for the County of Northumberland, to St. Mary's Trust Company and assigned by Mary E. Welsh to the National Bank of Shamokin, Pennsylvania, which assignment is recorded in the same office in Mortgage Book 107, page 424, shows upon its face that it was made for consideration and that the said assignment is absolute.

"4. There are absolutely no facts set forth in the statement of claim entitling the plaintiff to recover in this action.

". . . defendant prays judgment and that the said plaintiff may be barred from having or maintaining her said action against it."

The affidavit of defense in lieu of demurrer, raising questions of law filed by defendant "is an admission of

the truth of all the material facts sufficiently pleaded, and of every inference fairly deducible therefrom": Blieden v. Toll, 139 Pa. Superior Ct. 436, 438; Troop v. Franklin Savings & Trust Co., 291 Pa. 18; Franklin Sugar R. Co. v. John et al., 274 Pa. 205; Henzel et al. v. Patterson Building and Loan Assn. No. 2 et al., 128 Pa. Superior Ct. 531, 532.

So viewed, the pleadings establish the following material facts:

Plaintiff was on September 21, 1925, the owner and lawfully possessed of a mortgage of the value of $10,-000, recorded in Northumberland County in Mortgage Book 77, page 332, dated June 7, 1912, executed by J. A. Welsh, J. I. Welsh, and John O'Gara, to the St. Mary's Trust Company in the sum of $10,000 and assigned by the St. Mary's Trust Company to the plaintiff by assignment dated June 18, 1925, recorded in the county aforesaid in Mortgage Book 118, page 575.

On September 21, 1925, J. A. Welsh, who was the husband of plaintiff, borrowed $11,500 from the National Bank of Shamokin, Pa., on his note, payable three months after date, and on the same day plaintiff executed an assignment of the mortgage above mentioned to the National Bank of Shamokin as collateral security for said loan. This assignment was recorded in Northumberland County in Mortgage Book 107, page 424. The loan of $11,500 was renewed without reduction at maturity and by a series of renewal notes, from time to time, until December 22, 1927, when the said loan was paid the National Bank of Shamokin by J. A. Welsh. The assignment by plaintiff to the National Bank of Shamokin was made as an accommodation to J. A. Welsh, and as collateral for the loan of $11,500 and for no other purpose. The National Bank of Shamokin upon the repayment of the loan of $11,500 by J. A. Welsh, was in duty bound to reassign to plaintiff the mortgage, but instead of so doing, said bank, on

September 22, 1927, contrary to the demand of the plaintiff and her agreement with it, wrongfully and unlawfully converted the said mortgage to its own use and benefit.

As of December 13, 1932, the National Bank of Shamokin, Pa., was merged and consolidated with the Dime Trust and Safe Deposit Company of Shamokin, Pa., under the name, style and title of National-Dime Bank of Shamokin, became the corporate successor of National Bank of Shamokin, and is entitled to the rights, benefits and privileges and is subject to the obligations of the former National Bank of Shamokin.

Defendant, on demand of plaintiff, has refused to execute a reassignment of the said mortgage and has unlawfully converted the same to its own use, to the damage of plaintiff.

Defendant's first reason complains that this action is not sustainable as an action of trespass. We see no merit in this reason.

Plaintiff's statement alleges that, after the note of J. A. Welsh for which the mortgage of plaintiff had been assigned to the National Bank of Shamokin as collateral security had been paid, defendant refused, on demand, to assign the said mortgage to plaintiff, but instead, wrongfully and unlawfully converted the same to its own use.

Insofar as the statement of claim discloses, defendant at no time sold or disposed of said mortgage.

1 Pa. Standard Prac. 339, §50, under the heading "Conversion of Property", says:

"The general rule in other states is that where a tortfeasor has derived a benefit from the conversion of personal property the owner of the property may proceed against the wrongdoer in an action of assumpsit for the recovery of the full value of the property converted, at least where the property has been converted by the wrongdoer into money or its equivalent. In

Pennsylvania it has been held that assumpsit is not a proper remedy for the mere wrongful appropriation, detention, or use of personal property. There is much authority holding that if the personal property of one has been wrongfully taken by another and remains in his possession the owner may not recover the value in an action of assumpsit."

In Satterlee v. Melick & Eves, 76 Pa. 62, 65, it is said:

"It is evidently true, that in many cases, the owner of goods wrongfully taken or detained by another, may waive the tort and recover on a count for money had and received in assumpsit. But then there must either be some evidence that goods have been actually converted into money by the wrongdoer, or the circumstances must be such as to raise a presumption that he has done so."

In Bethlehem Borough v. Perseverance Fire Co., 81 Pa. 445, the court (Mr. Justice Mercur) on page 459, said:

"The tenth assignment strikes at the form of the action. The declaration was in assumpsit. This action cannot be sustained unless there was an express contract, or the law will imply a contract: 1 Chit. Pl. 99. It does not lie for a chattel illegally detained: Willet v. Willet, 3 Watts 277. The plaintiff cannot waive the tort and recover the value of the goods received unless the tortfeasor has sold the article and received the money."

In Anderson Equipment Co. v. Findley, 350 Pa. 399, it is said (p. 401):

"The mere wrongful detention of a chattel is a tort, and an implied promise to pay cannot arise therefrom. In Rees & Sons Co. v. Western Exposition Soc., 44 Pa. Superior Ct. 381, it was said (p. 383):

" 'There can be no doubt of the existence of a general rule which in substance declares that where the per-

sonal property of one has been wrongfully taken by another and remains in his possession, the owner cannot recover its price or value in an action of assumpsit . . . Deysher v. Triebel, 64 Pa. 383; Satterlee v. Melick, 76 Pa. 62; Bethlehem Borough v. Fire Co., 81 Pa. 445; Balliet v. Brown, 103 Pa. 546, are all on this subject and will sufficiently point the way to the earlier precedents which have long since placed the existence of this rule beyond question.' See also: Parry v. First National Bank of Lansford, 270 Pa. 556, 113 A. 847. Since the detention by plaintiff, if unlawful, would have been tortious, a counterclaim based thereon cannot be made in an action of assumpsit. Act of May 14, 1915, P. L. 483, section 14; Roth v. Reiter, 213 Pa. 400, 62 A. 1063. And see Groetzinger v. Latimer, 146 Pa. 628, 23 A. 393; Jenkins v. Rush Brook Coal Co., 205 Pa. 166, 54 A. 715.

"Furthermore, defendant in the facts of this case could not waive the tort, if such there were, and claim in assumpsit, because no conversion of the used shovel into money or its equivalent was alleged or proved. In Boyer v. Bullard, 102 Pa. 555, where plaintiff brought foreign attachment upon assumpsit for chattels detained by defendant, this court stated (p. 558) :

" 'It is urged that the plaintiff might waive the tort, and claim in assumpsit. This can be done only in cases where there is a contract either expressed or implied. . . . In the present case there was a mere detention of the chattels. There was no conversion of them into money or into any form of securities. There was no implied sale to defendants whereby an action for goods sold and delivered could be maintained. The whole case is purely one in tort, for which no action ex contractu can be maintained': Stanton v. Phila. & R. Ry. Co., 236 Pa. 419, 424, 84 A. 832; Willet v. Willet, 3 Watts 277; Scott, Law of Bailments (1931), page 115. See also: Weiler v. Kershner, 109 Pa. 219, 222."

There being no conversion of the mortgage into money or its equivalent (insofar as is shown by plaintiff's statement), trespass is the proper remedy.

The allegation in the affidavit of defense that the statement does not conform to the provisions of the Practice Act of May 14, 1915, P. L. 483, in that "no copies of the notes evidencing the several loans mentioned and described in plaintiff's statement of claim, are attached to or made a part of the statement of claim", as provided by section 5 of the Practice Act, supra, is of no moment in this issue. If counsel for defendant was of opinion the statement did not conform to the provisions of the Practice Act, supra, he should have moved to strike off, as provided by section 21 of the said act. Failure to conform to the provisions of the Practice Act is not ground for a summary judgment. However, on a motion to strike off under section 21, the court may allow an amendment or new pleading to be filed, upon such terms as it may direct.

"Copies of writings not essentially a part of the instrument sued upon need not be attached to the pleadings": The A. J. Alsdorf Corp. v. DeWalt Products Corp., 43 Lan. L. R. 606 (syllabus).

The basis of this action is the failure on the part of the bank to assign the mortgage to plaintiff after the loan for which the mortgage was assigned as collateral security (and that alone) had been paid.

In The A. J. Alsdorf Corp. v. DeWalt Products Corp., supra, it is held (p. 607):

"The Practice Act does not require that plaintiff attach evidential documents but only documents upon which the action is based: William Penn Motor Indemnity Exchange v. Elliott, 4 D. & C. 332; Franklin Sugar Refining Co. v. Fulton Nebring and Hauser Co., 1 D. & C. 615; Davey Tree Expert Co. v. Strassburger, 33 York Legal Record 77."

We do not think the notes complained of are such documents or records as are required to be attached to

plaintiff's statement of claim, under the Practice Act of 1915, section 5, supra.

In addition, if defendant deems the notes material, it can, under the Act of February 27, 1798, 3 Sm. L. 303, sec. 1, 28 PS §61, which is still in force, move and upon good and sufficient cause shown, may require plaintiff to produce books or writings in her possession or power, which contain evidence pertinent to the issue, and upon failure to comply therewith by plaintiff, judgment may be had for defendant in the case or nonsuit.

The third reason assigned is without merit. It is a matter of defense, plaintiff having alleged in her statement of claim that the assignment was made to the bank as collateral security and that alone.

As stated in Rhodes v. Terheyden et al., 272 Pa. 397, on page 401:

"The question to be decided under section 20 of the act, which provides only 'a substitute . . . for the common law demurrer' (Hutchinson Baking Co. v. Marvel, 270 Pa. 378, 381), is not whether the statement is so clear, in both form and specification, as to entitle plaintiff, without amendment, to proceed to trial, but whether, upon the facts averred, it shows, as a 'question of law', that plaintiff is not entitled to recover."

"Plaintiff's statement of claim averred the ultimate facts which, if established by the evidence, entitled him to recover": Hendley & Co. v. Bittinger, 249 Pa. 193, 195.

In this case, we fail to see where there can be pressed, successfully, the contention of the defendant that plaintiff's statement does not state a good cause of action.

## Order

And now, to wit, February 26, 1945, the affidavit of defense, raising questions of law, is dismissed. The defendant is hereby given 15 days from the time of the filing of this opinion within which to file a supplemental affidavit of defense to the averments of fact of the statement.