**WILLIAMS TOWNSHIP BOARD OF SUPERVISORS and Township of Williams**

v.

**WILLIAMS TOWNSHIP EMERGENCY COMPANY, INC., a/k/a Williams Township Emergency Company, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2009.

Decided Dec. 11, 2009.

Ralph J. Bellafatto, Easton, for appellant.

Brian M. Monahan, Easton, for appellees.

BEFORE: FRIEDMAN, Senior Judge, and KELLEY, Senior Judge, and McCLOSKEY, Senior Judge (P.).

OPINION BY Senior Judge McCLOSKEY.

The Williams Township Emergency Company (WTEC) appeals from an order of the Court of Common Pleas of Northampton County (trial court) that (1) denied the application of the Township of Williams (Township) and the Williams

Township Board of Supervisors for permanent injunctive relief; (2) granted WTEC's petition for transfer of its assets; and (3) granted WTEC's motion to vacate the preliminary injunction the trial court had initially ordered in favor of the Township. Additionally, and pertinent to WTEC's appeal, the trial court created a constructive trust of improved property owned by WTEC, known as the Raubsville Road Property, that designated WTEC and its assigns or heirs as trustee and the Township as beneficiary. We now affirm in part and reverse in part.

WTEC was incorporated as a nonprofit corporation with the purpose of providing emergency ambulance service in the Township. WTEC has been providing such service, as well as basic life support services, for forty years. The Easton Emergency Squad (EES) has provided the Township with advanced life support. The two emergency companies have cooperated over the years, in part because of geographical proximity. Although WTEC has remained fiscally sound despite a decrease in volunteers, maintaining the company as independent has become inefficient because of the relatively low annual call volume, only between 230 to 250 billable ambulance transports, and difficulty maintaining adequate staff.

In 2006, WTEC and EES began merger discussions and ultimately agreed to merge. WTEC met with the Board of Supervisors, who initially endorsed the merger and who, on or about April 11, 2007, designated EES as the primary ambulance service provider for the Township. However, on May 24, 2007, the Township and its Board of Supervisors (collectively hereafter referred to as the Township) filed a complaint with the trial court seeking injunctive relief. At the same time, the Township filed a motion for a prelimi-

nary injunction, seeking to maintain the status quo.

In its complaint, the Township averred that WTEC was the owner of various real and personal property and that the Township had contributed $126,245.00 of taxpayer money to WTEC over the period from 2003 to 2006, with $45,000.00 budgeted, but not paid, to WTEC for 2007. The Township also asserted that, following WTEC's notice of its intent to merge with EES as of July 1, 2007, the Township sought detailed information from WTEC and EES, including a list of voting squad membership, copies of current by-laws, copies of all paperwork filed with EES' Medical Service Council, a written plan of intended emergency medical service coverage following the merger and a complete audit of WTEC's finances and any other pertinent accounts over the preceding three-year period by a certified public accountant (CPA).

The Township indicated that EES failed to provide the requested information and that, as of the time of the filing of the complaint, WTEC had only partially complied. The Township averred that WTEC had a fiduciary responsibility to the Township's residents and that they had a beneficial interest in WTEC's assets. The Township referred to WTEC's by-laws, which provided that if WTEC should close, WTEC would tender all property and monies to the Board of Supervisors. Hence, the Township sought an injunction that would freeze any and all assets of WTEC which are not necessary to its daily operation as the primary provider of emergency ambulance service in the Township. The Township also sought an order directing that a CPA of its selection be hired to perform a three-year audit of all assets, liabilities and financial records of WTEC, and directing WTEC to file a detailed in-

ventory of all assets with the Prothonotary of the trial court.

By order dated May 31, 2007, the trial court granted the Township's motion for a preliminary injunction, which (1) directed WTEC to allow a CPA to perform a three-year audit, (2) directed the CPA to assist WTEC with an inventory of all assets, which was to be filed with the Prothonotary, and (3) froze all of WTEC's assets, with the exception of those necessary for WTEC's daily operation.[1] WTEC and EES thereafter complied with the trial court's order. The Township hired Robert J. Davidson, CPA, to conduct the audit. A second audit was conducted by J.R. Henry Consulting, Inc., who was hired by EES. Mr. Davidson issued a report essentially concluding that WTEC had a clean bill of financial health. J.R. Henry Consulting, Inc., issued a similar report and specifically endorsed the merger plans.

WTEC subsequently filed an answer with new matter alleging that the Township's claims were barred by the doctrines of consent and estoppel, as the Board of Supervisors had already approved its merger plans. WTEC noted that, under the merger plans, it would not close, but instead would maintain an ongoing presence with emergency ambulance service being provided from the same location on Raubsville Road in the Township.[2] On the same day that WTEC filed its answer to the Township's complaint, it also sought an order declaring that the merger will not result in its closing, as well as approval of a petition to transfer assets.

WTEC asserted in its transfer petition that, in accordance with its merger plans, WTEC would merge into a new EES. WTEC reiterated that it would continue to provide emergency ambulance service from the Raubsville Road location in the Township and that said location was not closing. WTEC noted that the Board of Directors of the newly-merged EES would consist of two members from WTEC and three members from the original EES.[3] WTEC sought an order (1) dismissing the existing preliminary injunction that had frozen its assets; (2) approving the merger plan; and (3) approving the transfer of assets. The Township filed an answer requesting that WTEC's petition be denied.

The trial court held a non-jury trial on August 21, 2008. On that same date, the parties reached an agreement permitting transfer of all of WTEC's property to the newly-merged EES, with the exception of the Raubsville Road property. In fact, the heart of the Township's claim before the trial court related solely to the Raubsville Road property, and the Township based its claims primarily on a provision of WTEC's by-laws that provides that WTEC will turn over its assets to the Township in the event that WTEC "closes."

The trial court made various factual findings relating to WTEC's acquisition and payment for the Raubsville Road property. The trial court found that the Township had contributed approximately

1. In its brief to this Court, WTEC notes that the trial court entered this order ex parte, that no one appeared on its behalf to oppose the motion, that no record was made and that it did not retain counsel until July, 23, 2007.

2. The merger plans refer to this location as the Williams Township substation; however, we will continue to refer to this property as the Raubsville Road property.

3. WTEC also noted that the new EES would remain a nonprofit corporation. WTEC also asserted that notice of this petition had been sent to the Office of Attorney General, which acts as *parens patriae* for the Commonwealth in these situations. The Office of Attorney General did not oppose the merger plans.

918

$120,000.00 to WTEC between 1990 and 2006, excluding insurance and gas, and that the Township discontinued contributions in 2006.

With regard to WTEC's acquisition of the Raubsville Road property, the trial court determined that WTEC acquired the property "through private donations made by citizens of Williams Township, and through a bequest from a private testator." (Trial Court Opinion, Finding of Fact No. 4). Additionally, the trial court found that the Township did not begin to make "relatively regular annual contributions to [WTEC] until after [WTEC] had satisfied the mortgage on the Raubsville Road property." (Trial Court Opinion, Finding of Fact No. 7). The trial court then noted Section 4 of the by-laws, which states that: "[s]hould this organization close, all property and monies will be given to the Board of Supervisors of Williams Township." In seeking to analyze the question of whether the merger would constitute the "closing" of WTEC, the trial court rendered factual findings regarding the nature of the merger. In summary, the trial court found that the merged organization would be operated under the name Easton Emergency Squad, Inc., based upon the fact that (1) EES had the license for advanced life support services and other practical reasons, (2) the merger would result in EES absorbing all of WTEC's current members and all of WTEC's assets, and (3) the new operation would continue to use the Raubsville Road property in order to provide the Township with needed services. Additionally, the trial court determined that two members of WTEC would serve as board members on the new organization.

The trial court further observed that, because of declining membership, WTEC had problems obtaining a quorum in order to conduct business, but that, at a meeting on August 16, 2008, WTEC amended its by-laws, specifically Section 4, to state as follows: "[s]hould this organization close, all property and monies will be given to a similar nonprofit organization of our choice."

The trial court agreed with WTEC that the merger did not constitute a "closing" as envisioned in the original version of Section 4 of the by-laws, and, hence, the trial court did not address the question of whether WTEC had the power to amend Section 4 to delete the provision directing transfer of property to the Township if it "closed."

In reaching this conclusion, the trial court first referred to Section 5921 of the Nonprofit Corporation Law of 1988 (the Law), 15 Pa.C.S. § 5921, which provides, in pertinent part, as follows:

§ 5921. Merger and consolidation authorized

(a) Domestic surviving or new corporation.—Any two or more domestic nonprofit corporations, or any two or more foreign corporations not-for-profit, or any one or more domestic nonprofit corporations, and any one or more foreign corporations not-for-profit, may, in the manner provided in this subchapter, be merged into one of such domestic nonprofit corporations, hereinafter designated as the surviving corporation, or consolidated into a new corporation to be formed under this article, if such foreign corporations not-for-profit are authorized by the law or laws of the jurisdiction under which they are incorporated to effect such merger or consolidation.

The trial court contrasted this provision with other provisions in the Law addressing dissolution of a nonprofit corporation that relate to matters such as filing articles of dissolution, voluntary dissolution, winding up affairs and termination of the existence of the corporation and concluded

that a merger was not the equivalent of a "closing" as intended by Section 4 of the by-laws. *See* 15 Pa.C.S. §§ 5971, 5977 and 5978.

Following this discussion, the trial court described the power of a court sitting in equity to establish a constructive trust, opining that such a creation is not really a trust, but rather an equitable remedy. The creation of such a trust, according to the Superior Court decision upon which the trial court relied, namely *Gee v. Eberle*, 279 Pa.Super. 101, 420 A.2d 1050 (1980), focuses not on the question of whether the party subject to potential loss is the victim of another party's intent to wrongfully take property, but rather whether a party will be unjustly enriched if it is allowed to continue holding title to the property. The exercise of equity in this manner, the trial court stated, is to avoid unjust enrichment.

The trial court opined that a constructive trust was appropriate, reasoning as follows:

[I]t is clear that the Raubsville Property was purchased by WTEC with funds solicited from the citizens of Williams Township for the express purpose of constructing a property that would provide emergency services to Williams Township. Although the property has been held in the name of WTEC since it was purchased with donated funds, those funds were donated for the purpose of acquiring a property for the provision of emergency services to Williams Township. Although the evidence before this Court does not support the argument proffered by [the Township], the credible evidence does show that the Raubsville Property was, is, and should continue to be used to provide emergency services to Williams Township. Furthermore, the credible evidence shows that unjust enrichment

would result if the Raubsville Property ceased to be used to provide emergency services to Williams Township.

Consequently, although WTEC has legal title over the Raubsville Property, the people of Williams Township, and consequently the [Board of Supervisors] as their representative, have an equitable interest in the property. This interest is underscored by the existence of By-law Section 4, explicitly acknowledging said equitable interest possessed by the citizens of Williams Township. In acknowledgment of this interest, in recognition of the unjust enrichment that could result if this property was diverted from its current charitable purpose, and to ensure that the Raubsville Property is always used for the benefit of the citizens of Williams Township, this Court hereby creates a constructive trust of the Raubsville Property. This Court further declares that WTEC and its heirs or assigns is the trustee holding legal title to the Raubsville Property for the benefit of Williams Township and the [Board of Supervisors] for so long as the Raubsville Property is used to provide emergency services to Williams Township. If the Raubsville Property ever ceases to be used to provide emergency services to Williams Township, Williams Township or the ... Board of Supervisors may bring suit to enforce the constructive trust and transfer legal title to Williams Township.

(Trial Court Opinion, pp. 13–14).

Based upon this reasoning, the trial court granted WTEC's petitions to vacate the preliminary injunction and to approve the transfer of its property to the new organization, but, as described above, qualified the transfer with regard to the Raubsville Road property by creating a constructive trust relating to the same in favor of the Township.

WTEC appealed that decision to this Court,[4] raising the following issues: (1) whether the trial court exceeded its authority by imposing the remedy of constructive trust where the Township never requested such relief and the pleadings do not support the trial court's grant of that form of relief; (2) whether the record lacks evidentiary support for the trial court's grant of a constructive trust as a form of relief; and (3) whether the trial court's order imposing a constructive trust violates the Pennsylvania Charities Law, 15 Pa.C.S. § 5547(b) and 5929(b), relating to transfer of assets in the event of merger and non-diversion of assets for charitable purposes.[5]

The first issue WTEC raises is whether the trial court erred in creating a constructive trust where the Township never pleaded any facts or specifically requested the creation of such a trust. WTEC asserts that, while the Township claimed to have a "beneficial interest" in WTEC's assets, the only specific relief the Township requested in its preliminary injunction action was for the trial court to freeze WTEC's assets and to require WTEC to supply the Township with information relating to WTEC pending a review of its finances. Hence, WTEC contends that the relief the Township requested was limited to seeking information and freezing assets while it obtained and reviewed the information. WTEC asserts that the only grounds the Township asserted that would obstruct WTEC's merger plans centered on its be-

lief that it was entitled to the property under WTEC's by-laws, which provided for turning over the property only if WTEC were to "close."

Section 5547(b) of the Law, pursuant to which WTEC sought the trial court's approval to transfer its assets, relates to the diversion of property owned by a nonprofit corporation and states as follows:

(b) Nondiversion of certain property.— Property committed to charitable purposes shall not, by any proceeding under Chapter 59 (relating to fundamental changes) or otherwise, be diverted from the objects to which it was donated, granted or devised, unless and until the board of directors ... obtains from the court an order under 20 Pa.C.S. Ch.61 (relating to estates) specifying the disposition of the property.

Hence, if an entity operating a nonprofit corporation would attempt to "divert" the nonprofit corporation's assets away from the "object" to which donors intended their contributions to be applied, this provision requires the entity to first obtain court approval of such "diversion" under Chapter 61 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §§ 1–8815. WTEC apparently concluded that, in order to effectuate its merger with EES, it was required to obtain court approval under this provision. Neither party contests the notion that the trial court, in acting upon WTEC's petition, was sitting in equity.

Further, the Township points out that, by virtue of the directives contained in the

---

4. This Court's standard of review is limited to considering whether the trial court, sitting as a chancellor in equity, committed an error of law or abused its discretion. *City of Philadelphia v. Berman*, 863 A.2d 156 (Pa.Cmwlth. 2004). A factual determination by the trial court will not be reversed on appeal absent an error of law or lack of support in the record. *Robbins v. Kristofic*, 434 Pa.Super. 392, 643

A.2d 1079, *petition for allowance of appeal denied*, 539 Pa. 654, 651 A.2d 541 (1994).

5. The Township also filed a motion to quash WTEC's appeal and addressed the merits of this motion in its brief on the merits. However, on February 12, 2009, this Court issued an order denying the Township's motion to quash.

above-quoted provisions of the Law, the trial court was acting in equity, as Section 711(21) of the Probate, Estates, and Fiduciaries Code, 20 Pa.C.S. § 711(21), vests Orphan's Court divisions of trial courts with jurisdiction as follows:

The administration and proper application of funds awarded by an orphans' court or an orphans' court division to a nonprofit corporation heretofore or hereafter organized under the laws of the Commonwealth of Pennsylvania for a charitable purpose at the direction of the orphans' court or orphans' court division or at the direction of a settler or testator of a trust or estate, jurisdiction of which is exercised through the orphans' court division except as the administrative, presiding or president judge of such division disclaims the exercise of future jurisdiction thereof.

■ Based upon these provisions, the Township contends that the trial court had the authority to impose a constructive trust to ensure that the Township and its citizens would be protected if the property was ever diverted from its charitable purpose. The above-quoted provisions appear to grant equity jurisdiction to a trial court addressing the transfer of property held by a nonprofit corporation. Courts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute.

■ However, WTEC is correct to note that a trial court must formulate an equitable remedy that is consistent with the relief requested; while a chancellor in equity may fashion a remedy that is narrower than the relief requested, he or she may not grant relief that exceeds the relief requested. *North Mountain Water Supply Co. v. Troxell*, 232 Pa. 155, 81 A. 157 (1911). The constructive trust the trial court fashioned in this case is consistent with, or at least no more broad than, the

Township's request for the trial court to declare that the Township is the owner of the Raubsville Road property. Consequently, we do not agree that the trial court exercised its equitable powers to fashion a form of relief other than the specific relief the Township requested. The question remains whether the trial court had the power to enter such relief in this case.

■ WTEC asserts that the abundant evidence indicating that the Township never specifically contributed money to WTEC for the discrete purpose of acquiring the Raubsville Road property supports its position that the trial court erred in creating a constructive trust of the property. The trial court's own findings confirm the fact that the Township never contributed toward the purchase of the Raubsville Road property. As indicated above, the trial court determined that the Township itself never contributed to WTEC until many years after WTEC held title to the property. Hence, there is no evidence to support the Township's position that it has an equitable interest in this particular asset of WTEC.

■ Further, WTEC argues that the Township failed to prove all of the elements necessary for the creation of a constructive trust. As early as 1976, this Court, in an original jurisdiction action, considered whether the Court should create a constructive trust on property a governmental official obtained from kickbacks of insurance premiums he secured on behalf of the Commonwealth. *Commonwealth of Pennsylvania v. Hilton*, 24 Pa. Cmwlth. 285, 355 A.2d 841 (1976). The court's observations in considering the constructive trust issue clarify the fact that the existence of a fiduciary relationship is one factor that may support the creation or imposition of such a trust.

■ Moreover, a constructive trust may arise, even where no fiduciary relationship exists, where a person holding title to property is subject to another on the ground that he would be unjustly enriched if he were allowed to retain the property. *Shippenville–Elk Volunteer Fire Department v. Ladies Auxiliary of the Shippenville–Elk Township Volunteer Fire Department*, 680 A.2d 923 (Pa.Cmwlth.1996), *petition for allowance of appeal denied*, 547 Pa. 720, 688 A.2d 174 (1997). Quoting the Restatement (Second) of Agency, § 388 (1958), the Court in *Commonwealth v. Hilton* noted that, unless an agent and his principal have agreed that the agent may retain any profit associated with the performance of his duties, the agent is under a duty to give profits to the principal. An agent holds such profits "upon a constructive trust for the beneficiary." Restatement of Restitution, § 197 (1937). The court further quoted the Restatement of Restitution, § 160, as follows: "[w]hen a person holding title to property is subject to an equitable duty to convey it to another on the ground that he will be unjustly enriched if he were permitted to retain it, a constructive trust arises."

■ The Court noted that evidence of intention to create a trust is not necessary for the formation of a constructive trust. Rather, a constructive trust is an equitable remedy that is designed to prevent unjust enrichment. The test for the appropriateness of creation of such a trust by a Court in equity is whether unjust enrichment can be avoided. The Court quoted Justice Cardozo, who stated in *Beatty v. Guggenheim*, 225 N.Y. 380, 386, 122 N.E. 378, 380–81 (1919) (abrogated as stated in *Israel v. Chabra*, 12 N.Y.3d 158, 878 N.Y.S.2d 646, 906 N.E.2d 374 (2009)):

A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee ... A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.

*Commonwealth v. Hilton*, 355 A.2d at 843.

In *Shippenville–Elk Township Volunteer Fire Department*, a fire department filed a complaint in equity against the ladies' auxiliary in an attempt to obtain funds the auxiliary had collected but refused to give to the department. The trial court in that case concluded that the auxiliary was not an entity distinct from the department, but rather was created to help the department. The court opined that the auxiliary and department had a fiduciary relationship and to allow the auxiliary to keep the funds would unjustly enrich the auxiliary. In this case, the evidence appears strong enough to show that a fiduciary relationship exists between the Township and WTEC. Hence, our decision in *Shippenville–Elk Township Volunteer Fire Department* is not dispositive of this matter.

Although not cited by either party, this court's early decision in *Lacey Park Volunteer Fire Company No. 1 v. Board of Supervisors of Warminster Township*, 27 Pa.Cmwlth. 54, 365 A.2d 880 (1976), provides some insight into how the Court has viewed the relationship between volunteer fire companies and the municipalities they serve.[6] In that case, the Township first directed a volunteer fire company to devel-

6. However, we note that Warminster Township was a Second Class Township, and the statutory provisions relating to the powers of such townships were relevant to the Court's discussion in that case.

op a merger plan in order to merge or consolidate with another Township fire company. Ultimately, the Township rejected the proposed plan, voted instead to suspend the operations of the fire company and ordered the company to turn all of its vehicles over to another local fire company. The Court opined that, under the Second Class Township Code, the Township had the power to make regulations concerning the operation of fire companies, but that said authority did not provide the Township with the power to take possession of an incorporated company's property not owned by the Township.

In addressing the company's property interest under the former Not–for–Profit Code, then located at 15 Pa.C.S. § 7549, which provided that "[e]very nonprofit corporation incorporated for a charitable purpose ... may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation, in trust, for the purpose or purposes set forth in its articles," the Court quoted our Supreme Court's decision in *Bethlehem Borough v. Perseverance Fire Co.*, 81 Pa. 445, 458 (1876), wherein that Court opined that, while boroughs had power to regulate concerning the management of fires, the statutory authority did not provide boroughs with the:

right ... to take out of the possession of an incorporated company the fire-engines and apparatus which is not owned by the borough. It is not given to the borough authorities to decide that the company has forfeited all its rights to possession and custody of the property it holds in trust, and therefore has no rights entitled to respect. The borough may purchase and own fire-engines or apparatus, or it may appropriate money as a donation to a fire company to assist in their purchase. What the borough owns herself, she may take possession of and control or sell it. What an incorpo-

rated company owns the borough cannot control in that manner.

*Lacey Park Volunteer Fire Company No. 1*, 365 A.2d at 882.

The language of this case suggests that, while a municipality cannot be viewed as having an actual ownership interest in property that was acquired by a nonprofit, they do have some interest in the property, because the *Bethlehem Borough* decision refers to the nonprofit company as having the right "to possession and custody of property it holds in trust."

Focusing upon the decisions regarding the creation of a constructive trust, we observe that, when a clear fiduciary relationship does not exist between two parties, the courts have nevertheless held that the creation of such a trust is appropriate when the party holding title to the property has an equitable duty to transfer the property based upon the proposition that the party would be unjustly enriched if they kept the property. *Gee.* Our courts have summarized the elements a party must prove in order to establish that unjust enrichment has or will occur:

(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. (citations omitted). The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Limbach Company, LLC v. City of Philadelphia*, 905 A.2d 567 (Pa.Cmwlth.2006), citing *Mitchell v. Moore*, 729 A.2d 1200, 1203–1204 (Pa.Super.1999), *petition for al-*

*lowance of appeal denied,* 561 Pa. 698, 751 A.2d 192 (2000), and *Torchia v. Torchia,* 346 Pa.Super. 229, 499 A.2d 581, 582 (1985).

■ We cannot conclude that the facts upon which the trial court relied support a conclusion that WTEC has been unjustly enriched at the expense of the Township at this time. Although there is evidence in the record that the Township contributed funds to WTEC, there is no evidentiary connection definitively linking those contributions to the Raubsville Road property. The Township contributed certain funds, but has not sought the return of those contributions, nor do we believe that the Township could recover under an unjust enrichment theory under the present circumstances. In this case, there is no basis to conclude that WTEC's retention and transfer of the Raubsville Road property at this time to its new nonprofit entity results in any inequity to the Township.

We voice no comment on the question of whether an attempt in the future by the newly-merged EES to divest itself of the Raubsville Road property could then result in unjust enrichment. Such a situation might present a stronger argument in favor of concluding that EES would be unjustly enriched, but that issue is not before us. Based upon the foregoing, we conclude that the trial court abused its discretion in creating a constructive trust in relation to the Raubsville Road property.

■ Additionally, we agree with WTEC that Section 5929 of the Law contains language that directs property belonging to merging nonprofit corporations becomes, upon approval of a merger, the property of the new corporation. Section 5929 states as follows:

[A]ll the property, real, personal and mixed, and franchises of each of the corporation parties to the merger or consolidation, and all debts due on what-

ever account to any of them, including subscriptions for membership and other choses in action belonging to any of them, shall be deemed to be vested in and shall belong to the surviving corporation, as the case may be, without further action, and the title to any real estate, or any interest therein, vested in any of the corporations shall not revert or be in any way impaired by reason of the merger or consolidation.... Any devise, gift or grant contained in any will or other instrument, in trust or otherwise, made before or after such merger or consolidation, to or for any of the constituent corporations, shall inure to the surviving new corporation....

Hence, once the trial court concluded that the merger comported with the Law, Section 5929 directed that WTEC's property became the property of the newly-formed EES.

Accordingly, we reverse the trial court's order insofar as it created the constructive trust. The remainder of the trial court's order granting WTEC's petition to transfer and denying the Township's request for permanent injunctive relief is affirmed.

Senior Judge FRIEDMAN concurs in the result only.

### *ORDER*

AND NOW, this 11th day of December, 2009, the order of the Court of Common Pleas of Northampton County (trial court), insofar as it created a constructive trust of the Raubsville Road property in favor of the Township of Williams, is reversed. In all other respects, the order of the trial court is affirmed.