# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re:                                           :
                                                 :
Independent Fire Co. No. 1                       :
a non profit corporation                         :    No.  1489 C.D. 2018
                                                 :
Appeal of:  Commonwealth of                      :    Argued:  September 17, 2019
Pennsylvania                                     :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED:  February 5, 2020


The Commonwealth of Pennsylvania, Office of Attorney General, Charitable Trusts and Organizations Section (Commonwealth), appeals from the October 4, 2018 order of the Court of Common Pleas of Lycoming County (trial court) denying its petition seeking a rule to show cause why Independent Fire Company No. 1 (Independent) should not be involuntarily dissolved and its assets distributed pursuant to the *cy pres* doctrine.  We affirm on a rationale that differs from that of the trial court.

This appeal involves the interplay between two statutes—the Pennsylvania Nonprofit Corporation Law of 1988 (Nonprofit Law)[1] and the Uniform

---

[1] 15 Pa.C.S. §§5101-6146.

Trust Act (Trust Act).[2] The predominate legal question in this case emerges in the context where the trial court found that it has become "impracticable" for a nonprofit to pursue the charitable purpose enunciated in its articles of incorporation, but the Commonwealth did not prove that any of the nonprofit's assets have been received, placed, or otherwise held in "trust" by the nonprofit. In these circumstances, the issue presented is whether the Commonwealth, without obtaining an order of involuntary dissolution under the Nonprofit Law, may acquire and transfer all the general assets of an operating, non-defunct charitable nonprofit corporation to another nonprofit pursuant to the *cy pres* doctrine as codified in the Trust Act. We conclude that the Commonwealth lacks such authority.

## Background

The facts of this case, as recounted by the trial court, are as follows:

Until May 1, 2016, Independent was one of three fire companies certified to fight fires in South Williamsport Borough [Borough]. The South Williamsport Fire Department (SWFD) was formed through a merger of the two other fire companies constructed by the Borough. As a result of not joining the merged SWFD, Independent was decertified when the Borough instituted Ordinance No. 2016-01 officially recognizing only SWFD as the Fire Department of the Borough. Following this, the Borough contacted the [Commonwealth] notifying [it] Independent was decertified and could no longer perform [its] charitable purpose, which is "[f]or the suppression of fires of property and buildings in the Borough of South Williamsport, Pennsylvania." Independent still functions as a 501(c)(3)[3] nonprofit, but has not responded to any fires since

---

[2] 20 Pa.C.S. §§7701-7799.3.

[3] Section 501(c)(3) of the Internal Revenue Code of 1986, 26 U.S.C. §501(c)(3).

decertification, although some members have chosen to join other companies to continue their own firefighting activity.

The [Commonwealth] originally called for the involuntary dissolution of Independent . . . . This claim was not founded in support put forward by the Commonwealth and additionally was directly contradicted by testimony put forward by Independent . . . . [T]he Commonwealth [then] stated [its] intention that Independent may go on existing, but [its] monies and property should go to SWFD. Prior to decertification Independent took fire calls throughout the County of Lycoming and outside the county. Independent hosted multiple charitable events and festivals and responded to multiple emergency calls that were not fire[-]related. Since decertification, Independent has reached out to local neighboring townships in an attempt to continue [its] firefighting mission . . . . Independent still functions as an operating corporation [and] is in good standing with [its] accounting . . . .

(Trial court op. at 2-3, 6-7) (citations to the record omitted).

Following a two-day hearing, the trial court, by opinion and order dated October 4, 2018, denied the Commonwealth's petition. In doing so, the trial court initially outlined the gist of the dispute. More specifically, the trial court found that "Independent's charitable purpose has certainly become 'impractical,' since [it] may no longer fight fires in South Williamsport" and explained that, for this reason, the Commonwealth asserted that "the [d]octrine of *[c]y [p]res* is applicable and SWFD should receive [Independent's] assets and properties." *Id.* at 7.

In addressing this issue, the trial court noted that the doctrine of administrative deviation, currently codified in Section 7740.3(c) of the Trust Act, vested it with the authority "to modify an administrative provision of a charitable trust to the extent necessary to preserve the trust." 20 Pa.C.S. §7740.3(c). Nonetheless, the trial court concluded that, based upon prevailing precedent, it could not alter or amend the stated charitable purpose in Independent's articles of

3

incorporation because the phrase "in the Borough of South Williamsport" was "dispositive" and "substantive in nature," as opposed to "administrative in nature." (Trial court op. at 6.)[4] The trial court then opined that, "[h]owever, this is not a typical situation that screams for the application of *cy pres*." *Id.* at 7. The trial court stated: "Typical examples of when the [d]octrine is applied by courts are when a charitable gift is left through will or trust to a no[-]longer existent charity or when a charitable nonprofit voluntarily dissolves and the court must determine where the charitable property should go." *Id.*

Next, questioning the underlying legal basis for the Commonwealth's civil action, the trial court stated that it was unable to locate case law "where the Commonwealth attempt[ed] . . . an acquisition of assets, absent board members self-dealing, tremendous financial troubles, or unauthorized selling or transferring of charitable assets." *Id.* Following this observation, the trial court proceeded to delve into a general discussion of its equitable powers when resolving matters in the orphans' court division and, after noting that "Independent has historically [helped] others throughout the county, not just South Williamsport residents," specifically determined that "the [d]octrine of *[c]y [p]res* should not be applied." *Id.* at 8. In so concluding, the trial court found that "giving all [of Independent's] assets to a similarly situated company would not result in an equitable remedy"; to the contrary, the trial court commented that such a transfer "would be a perversion of the [d]octrine," namely one "that would amount to an asset grab." *Id.* at 9. Based on this reasoning, and embodying the notion that it possessed broad, common law equitable

---

[4] *See In re Estate of Girard*, 132 A.3d 623, 632-332 (Pa. Cmwlth. 2016) (discussing the distinction between "administrative" and "dispositive" for purposes of the doctrine of administrative deviation).

4

powers, the trial court found it necessary "to slightly modify [the] terms" of Independent's articles of incorporation in order for it to continue its charitable purpose, *id.*, and held as follows:

> [T]he most equitable way to continue to fulfill Independent's original charitable purpose is to allow [it] to act outside the narrow constriction of only engaging in services within South Williamsport. Since the Borough is only 1.89 square miles this does not amount to abandoning the community, as the charitable impact of Independent's services will still be felt close to home . . . .
>
> In promoting strong public policy and equity the [c]ourt is required to allow Independent to seek reasonable alternatives in nearby townships and communities to most closely fulfill its charitable purpose. In other words, the [c]ourt finds that despite its location physically within the Borough of South Williamsport, Independent shall be free to affiliate with another borough or township to continue operating as a firefighting agency.

*Id.* at 9-10.

On these grounds, the trial court denied the Commonwealth's petition. Subsequently, the Commonwealth filed a timely notice of appeal with this Court, and both the trial court and the Commonwealth have complied with the strictures of Pa.R.A.P. 1925.

## Discussion

On appeal,[5] the Commonwealth argues that, given the undisputed facts of record, the trial court erred in failing to apply the doctrine of *cy pres*, stating that

---

[5] "This Court's standard of review is limited to considering whether the trial court, sitting as a chancellor in equity, committed an error of law or abused its discretion." *Williams Township Board of Supervisors v. Williams Township Emergency Company, Inc.*, 986 A.2d 914, 920 n.4 (Pa. Cmwlth. 2009).

charitable nonprofit corporations, like Independent, "are treated as charitable trusts by our law, with the general public as beneficiary." (Commonwealth's Br. at 13.) Relying predominately, if not exclusively, on the Comment to Section 7740.3 of the Trust Act and Section 5547(a) of the Nonprofit Law, the Commonwealth maintains that all of the assets of Independent are held in trust to further its charitable purpose, as stated in the articles of incorporation, and posits that once Independent ceased fighting fires in South Williamsport, its charitable purpose was extinguished. Emphasizing the trial court's express finding that Independent's "charitable purpose has certainly become impracticable," the Commonwealth asserts that Section 7740.3(a) of the Trust Act mandated, without exception, that the trial court apply *cy pres* and designate SWFD as a substituted beneficiary to receive all of the assets and property of Independent.[6]

In response, Independent stresses that it is a volunteer fire company and that the Borough is not responsible for its debts or liabilities and does not exercise any financial control over it. Independent argues that, despite its decertification, it was and is not defunct or obsolete; rather, it has over $700,000.00 in assets and continues to remain a functioning nonprofit corporation that retains members, holds meetings, maintains minutes, pays bills, files taxes, maintains its real estate and equipment, enters into contracts, engages in charitable community activities, and responds to multiple emergency calls. According to Independent, the Commonwealth cannot circumvent the process for involuntary dissolution in the Nonprofit Law and

---

[6] Because the Borough failed to file a brief in compliance with our previous order, this Court, by *per curiam* order dated May 14, 2019, precluded the Borough from filing a brief in this matter and participating in oral argument. Also, in correspondence dated December 10, 2018, SWFD informed this Court that it will not be participating in this appeal because is was not a party in the underlying action.

6

effectively achieve the same result through application of the doctrine of *cy pres* under the Trust Act. Independent asserts that unless or until it ceases to exist as a nonprofit corporation, the Commonwealth lacks the statutory authorization necessary to compel it to transfer its assets to another nonprofit. In large part, we agree with Independent.

As a starting point, we note that in both the proceedings below and before this Court, the Commonwealth did not attempt to portion the assets or funds of Independent into separate categories, *e.g.*, those that were invested, received from donations, or garnered by obtaining an incidental profit. Nor did the Commonwealth try to segment Independent's assets or funds based upon the manner in which Independent obtained them, including its physical and tangible property, *e.g.*, real estate, fire trucks, and the like. Instead, the Commonwealth apparently presumes that all of Independent's assets are owned solely by Independent itself and presses no argument to the contrary. We must, consequently, proceed on this assumption as well.

In *Lacey Park Volunteer Fire Company No. 1 v. Board of Supervisors of Warminster Township*, 365 A.2d 880 (Pa. Cmwlth. 1976), the township's board of supervisors suspended the operations of the appellant volunteer fire company, a duly registered nonprofit corporation, and ordered all of the vehicles of the appellant fire company to be transferred to another local fire company. On appeal, this Court first determined that the supervisors, under the pertinent section of the applicable township code, had the power to suspend the firefighting activities of the appellant fire company. We then decided whether the township or the appellant fire company had legal ownership of the assets of the appellant fire company.

7

In doing so, this Court quoted, as the relevant authority, then Section 7549 of the Corporation Not-for-Profit Code (Act), *formerly* 15 Pa.C.S. §7549, now Section 5547(a) of the Nonprofit Law, 15 Pa.C.S. §5547(a). This provision provided (and continues to provide) that "[e]very nonprofit corporation incorporated for a charitable purpose . . . may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation, in trust, for the purpose or purposes set forth in its articles." 15 Pa.C.S. §5547(a); *former* 15 Pa.C.S. §7549. We noted that it was undisputed that the appellant fire company was "a corporation incorporated for charitable purposes and thus encompassed by [the] Act" and "the real and personal property in question [were] titled in the name of the appellant." *Id.* Relying on and reproducing the words of our Supreme Court in *Bethlehem Borough v. Perserverance Fire Co.*, 81 Pa. 445 (1876), we reiterated the Court's holding that, while boroughs may have the statutory authority to make regulations concerning the management of fires, this power

> gives no right to the borough authorities to take out of the possession of an incorporated company the fire-engines and apparatus which [are] not owned by the borough. It is not given to the borough authorities to decide that the company has forfeited all its rights to the possession and custody of the property it holds in trust, and therefore has no rights entitled to respect. The borough may purchase and own fire-engines or apparatus, or it may appropriate money as a donation to a fire company to assist in their purchase. What the borough owns herself, she may take possession of and control or sell it. What an incorporated company owns the borough cannot control in that manner.

*Lacey Park Volunteer Fire Company No. 1*, 365 A.2d at 882 (quoting *Perserverance Fire Co.*, 81 Pa. at 458). From this line of reasoning, we concluded in *Lacey Park Volunteer Fire Company No. 1*: "The appellant nonprofit corporation owns the equipment and the real estate and until such time as the members decide the future of

8

the corporation and the property, it is premature for the lower court to consider the distribution of such property." 365 A.2d at 882.

We apply the holding in *Lacey Park Volunteer Fire Company No. 1* here. Therefore, although the Borough may have lawfully decertified Independent from fighting fires within its borders, Independent nonetheless retains exclusive ownership of the real and personal property that it possesses and, in general, has the legal authority to decide the future of its assets and status as a charitable nonprofit corporation, *e.g.*, whether it desires to dissolve voluntarily or merge with another firefighting company. In other words, the fact that the Borough enacted the Ordinance does not result in the destruction or cessation of Independent as a nonprofit corporation. After all, pursuant to Section 5502(a)(1) of the Nonprofit Law, a nonprofit corporation, with certain exceptions, is bestowed with "perpetual succession by its corporate name." 15 Pa.C.S. §5502(a)(1).

That said, the assets and property of Independent are not insulated from interference by the Commonwealth. Under Section 503 of the Nonprofit Law, the Commonwealth possesses the statutory authority to institute proceedings to revoke the articles of incorporation of a nonprofit corporation. 15 Pa.C.S. §503; *see also* 15 Pa.C.S. §5502(a)(1). Specifically, upon a proper showing of impropriety, a court may wind up the affairs of and dissolve a nonprofit corporation, thereby terminating its existence as a legal entity and disposing of and/or conveying its property and assets in the process.[7] *See* 15 Pa.C.S. §503; *see also* Sections 5977(c), 5978(a), and

---

[7] The "perpetual succession" of a nonprofit corporation mentioned above continues "unless a limited period of duration is specified in its articles" and is "subject to the power of the Attorney General under Section 503 (relating to actions to revoke corporate franchises) and to the power of the General Assembly under the Constitution of Pennsylvania." 15 Pa.C.S. §5502(a)(1).

9

5981 of the Nonprofit Law, 15 Pa.C.S. §§5977(c), 5978(a), 5981.[8]  In terms of dissolution, "[b]ecause all of a charitable non[]profit's assets are committed to a charitable purpose, when a charitable nonprofit ceases business, then any remaining funds or property must be given to a charitable nonprofit with a similar charitable purpose." *Commonwealth by Kane v. New Foundations, Inc.*, 182 A.3d 1059 (Pa. Cmwlth. 2018).  However, it is important to note that "[i]nvoluntary dissolution of a solvent corporation is a drastic measure which should be employed cautiously and only in extreme circumstances." *Gee v. Blue Stone Heights Hunting Club, Inc.*, 604 A.2d 1141, 1144 (Pa. Cmwlth. 1992); *see also Loveless v. Pocono Forest Sportsman Club, Inc.*, 972 A.2d 572, 574-75 (Pa. Cmwlth. 2009) (discussing the process and means by which involuntary dissolution may be achieved).  Significantly, the Commonwealth has abandoned its claim for involuntary dissolution at the trial court level, and also on appeal, and it does not seek to pursue involuntary dissolution of Independent as a means by which to effectuate the transfer of its property and assets to SWFD.  Instead, the Commonwealth relies, first and foremost, on application of the *cy pres* doctrine under Section 7740.3 of the Trust Act, 20 Pa.C.S. §7740.3.

As such, given the nature of its claim as framed and presented on appeal, the Commonwealth is proceeding in its traditional role as *parens patriae*, exercising

---

[8] Section 5981 of the Nonprofit Law states that a trial court may entertain proceedings for the involuntary winding up and dissolution of the corporation, when any of the following are established:  (1) the objects of the corporation have wholly failed; or are entirely abandoned, or that their accomplishment is impracticable; (2) the acts of the directors, or those in control of the corporation are illegal, oppressive, or fraudulent, and that it is beneficial to the interests of the members that the corporation be wound up and dissolved; (3) the corporate assets are being misapplied or wasted and that it is beneficial to the interests of the members that the corporation be wound up and dissolved; or (4) the directors or other body are deadlocked in the management of the corporate affairs and the members are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof.  15 Pa.C.S. §5981.

its responsibility to provide public supervision of charitable trusts, for "[p]roperty given to a charity is in a measure public property, and the beneficiary of charitable trusts is the general public to whom the social and economic benefits of the trusts accrue." *In re Milton Hershey School Trust*, 807 A.2d 324, 330 (Pa. Cmwlth. 2002) (internal citations omitted). The authority of the Commonwealth in this regard is now codified in Section 7735(c) of the Trust Act, which vests the Commonwealth with the broad power "to enforce a charitable trust." 20 Pa.C.S. §7735(c).[9] As part of its authority to oversee and enforce a charitable trust, the Commonwealth may file "a petition requesting a court . . . to apply *cy pres*." 20 Pa.C.S. §7740.3, Comment; *see Young v. Estate of Young*, 138 A.3d 78, 83 (Pa. Cmwlth. 2016) ("The Attorney General is an indispensable party in every proceeding which affects a charitable trust.").

Section 7740.3(e) of the Trust Act provides that a trust may be judicially terminated and the assets awarded to the charitable organization identified in the trust instrument or, alternatively, to a charitable organization selected by the trial court. "[I]f a particular charitable purpose becomes unlawful, impracticable or wasteful . . . the court shall apply *cy pres* to fulfill as nearly as possible the settlor's charitable

---

[9] A "[c]haritable trust" is defined as "[a] trust, or portion of a trust, created for a charitable purpose described in [S]ection 7735(a)." Section 7703 of the Trust Act, 20 Pa.C.S. §7703. Pursuant to Section 7735(a) of the Trust Act, "[a] charitable trust may be created for the relief of poverty, the advancement of education or religion, the promotion of health, governmental[,] or municipal purposes or other purposes the achievement of which is beneficial to the community." 20 Pa.C.S. §7735(a). Sections 7731 and 7732 of the Trust Act outline the requirements for creating a valid trust in Pennsylvania. 20 Pa.C.S. §§7731, 7732.

11

intention." 20 Pa.C.S. §7740.3.[10]  In describing the doctrine of *cy pres*, our Superior Court has explained:

> If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose,

[10] We note that although the legal concept of *cy pres* may be applied when it becomes "impracticable" to carry out a "particular charitable purpose," and involuntary dissolution may occur when "the objects of the corporation have wholly failed" or "that their accomplishment is impracticable," *see supra* note 7, the notion of "impracticable" appears to be much narrower (or more easily established) with respect to the former than with the latter.  *Compare* Restatement (Second) Trusts, §399, cmt. q. (Am. Law Inst. 1959) ("The doctrine of *cy pres* is applicable even though it is possible to carry out the particular purpose of the settlor, if to carry it out would fail to accomplish the general charitable intention of the settlor.  In such a case it is 'impracticable' to carry out the particular purpose, in the sense in which that word is used in this Section."), *with Zampogna v. Law Enforcement Health Benefits, Inc.*, 151 A.3d 1003, 1013 (Pa. 2016) ("[W]e hold that the interplay between a nonprofit corporation's corporate purpose and that corporation's authority to take corporate action must be construed in the least restrictive way possible, limiting the amount of court interference and second-guessing, which is reflective of both modern for-profit and not-for-profit corporations, and the modern corporate business laws that govern them.  Thus, we find that a nonprofit corporation's action is authorized when: 1) the action is not prohibited by the [Nonprofit Law] or the corporation's articles; and 2) the action is not clearly unrelated to the corporation's stated purpose.").

We, however, need not discuss this issue further because the Commonwealth, as explained above, has abandoned any claim of involuntary dissolution.  Nonetheless, this Court notes that the Commonwealth, in stating its "intention that Independent may go on existing," (Trial court op. at 3), has seemingly conceded that Independent has not completely failed in the accomplishment of its corporate objects.  Further, we note that a brief examination of Pennsylvania statutes and case law suggests that the duties of volunteer firefighters encompasses more than the mere act of "firefighting" and appear to include activities such as responding to various types of emergencies. *See generally* Section 7435 of the Emergency Management Services Code, 35 Pa.C.S. §7435; Section 601 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Section 15 of the Act of December 5, 1974, P.L. 782, 77 P.S. §1031; *International Association of Fire Fighters, Local 22, AFL-CIO v. Pennsylvania Labor Relations Board*, 35 A.3d 833, 835-36 (Pa. Cmwlth. 2012); *North Lebanon Township v. Workers' Compensation Appeal Board (Harbaugh)*, 829 A.2d 394, 398-99 (Pa. Cmwlth. 2003); *Harmony Volunteer Fire Co. and Relief Association v. Pennsylvania Human Relations Commission*, 459 A.2d 439, 442-43 (Pa. Cmwlth 1983).

> and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

*In re Estate of Elkins*, 32 A.3d 768, 777 (Pa. Super. 2011) (citation omitted). In addition, the Comment to Section 7740.3 states that "[t]he doctrine of *cy pres* is applied not only to trusts, but also to other types of charitable dispositions, including those to charitable corporations." 20 Pa.C.S. §7740.3, Comment.

To support its assertion that the trial court erred in failing to apply the *cy pres* doctrine, the Commonwealth, beside from relying on Section 7740.3 of the Trust Act and its accompanying Comment, also cites and places great weight on Section 5547(a) of the Nonprofit Law. As noted above, Section 5547(a) authorizes a nonprofit corporation to "take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation, in trust, for the purpose or purposes set forth in its articles." 15 Pa.C.S. §5547(a). In pertinent part, Section 5547(b) of the Nonprofit Law states that "property cannot be diverted from the objects to which it was donated, granted or devised, unless and until the board of directors or other body obtains from the court an order under 20 Pa.C.S. Ch. 77 (relating to trusts) specifying the disposition of the property." 15 Pa.C.S. §5547(b).[11]

---

[11] In its entirety, Section 5547 of the Nonprofit Law, titled "Authority to take and hold trust property," states:

> (a) General rule.--Every nonprofit corporation incorporated for a charitable purpose or purposes may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation, in trust, for the purpose or purposes set forth in its articles. The board of directors or other body of the corporation shall, as trustees of such property, be held to the same degree of responsibility and accountability as if not incorporated, unless a less degree or a particular degree of responsibility and

**(Footnote continued on next page…)**

The Commonwealth contends that, pursuant to Section 5547(a) of the Nonprofit Law, all the assets and property that Independent owns are unconditionally placed in a charitable "trust" by operation of law.[12] From this premise, the Commonwealth reasons that since the trial court found that it was "impracticable" for Independent to utilize its assets and property for the purpose stated in its articles of incorporation (firefighting in the Borough), the trial court had no choice in the matter and Section 7740.3 of the Trust Act obligated it ("shall") to apply the doctrine of *cy pres*.

We disagree. While the doctrine of *cy pres* presupposes (above all else) the existence of a "trust," the Commonwealth's argument rests on the faulty premise that all of the assets and property that Independent owns are, *per se*, placed into a "trust." In *New Foundations, Inc.*, a case that is not cited by either of the parties or

**(continued…)**

> accountability is prescribed in the trust instrument, or unless the board of directors or such other body remain under the control of the members of the corporation or third persons who retain the right to direct, and do direct, the actions of the board or other body as to the use of the trust property from time to time.
>
> (b) Nondiversion of certain property.--Property committed to charitable purposes shall not, by any proceeding under Chapter 59 (relating to fundamental changes) or otherwise, be diverted from the objects to which it was donated, granted or devised, unless and until the board of directors or other body obtains from the court an order under 20 Pa.C.S. Ch. 77 (relating to trusts) specifying the disposition of the property.

15 Pa.C.S. §5547.

[12] As recently observed by this Court, "[t]here are very few provisions in the [Nonprofit] Law that deal specifically with nonprofits that are created for a charitable purpose." *New Foundations, Inc.*, 182 A.3d at 1070.

14

the trial court below, this Court concluded as much. In that decision, we analyzed Section 5547(a) of the Nonprofit Law to determine whether the board of directors of nonprofits were acting as trustees with respect to trust property or as a corporate fiduciary concerning property that was not held in trust. We observed that resolution of this issue necessitated an examination of what assets were held in trust by the nonprofits in order to decide the applicable standard to be imposed upon the board and whether trust principles or corporate law principles controlled the board's decision-making. *See* 182 A.3d at 1070-71.

In *New Foundations, Inc.*, the Commonwealth argued that Section 5547(a) of the Nonprofit Law "means that all assets of the [nonprofits], whether they be in cash or other personalty or realty, are imbued with the corporations' charitable purposes and, as such, are held in trust for the benefit of the public at large." *New Foundations, Inc.*, 182 A.3d at 1072. The Commonwealth further maintained that Section 5547(a) "encompasses all the assets of a nonprofit corporation formed for charitable purposes, not only assets that have been expressly donated." *New Foundations, Inc.*, 182 A.3d at 1072. This Court, however, rejected the Commonwealth's assertions. In doing so, we explained as follows:

> [W]hether [Section] 5547(a) makes all the assets of a charitable nonprofit held "in trust" . . . depends on a textual analysis of how the phrase "may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation" is interpreted. If it is interpreted to not include revenues and excess revenues generated by a charity that are in or reflected in cash or property, then charitable nonprofit directors do not have a trustee duty of care but, rather, the same duty of care of all directors of nonprofits. However, if this provision is interpreted to include revenues and excess revenues — i.e., all assets—then charitable nonprofit directors are the equivalent of trustees.

15

In [Section] 5547(a), the "may take, receive and hold real and personal property" part of the phrase *indicates that something is being given to the nonprofit and not something generated from internal operations*. Similarly, the part of the phrase that the trustee principles apply to property "as may be given, devised to, or otherwise vested in such corporation" *deals with gifts, bequests and other property that is vested in the corporation for a charitable purpose*. While it could be argued that the term "otherwise vested" includes all property that the charitable nonprofit holds, in the context of the overall phrase, it *refers to that which is placed in its possession for charitable purposes*. *For example, . . . money cy pres'd to [a nonprofit] was properly vested in that charitable nonprofit to which trust principles would apply*.

*New Foundations, Inc.*, 182 A.3d at 1073-74 (emphasis added).

To buttress our conclusion, we pointed out that in Section 5547(b) of the Nonprofit Law, the General Assembly specifically stated that the doctrine of *cy pres* applies where a nonprofit "diverts" any of its assets, whether it be in the event of voluntary dissolution, involuntary liquidation and dissolution, or a general asset transfer. *See New Foundations, Inc.*, 182 A.3d at 1072-73 & n.8; *see also Williams Township Board of Supervisors v. Williams Township Emergency Company, Inc.*, 986 A.2d 914, 920 (Pa. Cmwlth. 2009) ("[I]f an entity operating a nonprofit corporation would attempt to 'divert' the nonprofit corporation's assets away from the 'object' to which donors intended their contributions to be applied, this provision requires the entity to first obtain court approval of such 'diversion' under [the Trust Law]."). However, as explained by this Court, the General Assembly omitted the doctrine from Section 5547(a). *See New Foundations, Inc.*, 182 A.3d at 1072-73 & n.8. Accordingly, this Court, drawing a distinction between assets that a nonprofit receives from a third party and assets that a nonprofit seeks to transfer to a third party, concluded that "if the General Assembly wanted trust principles to apply to all

assets committed to the charitable purpose, it would have said so, just like it said so with regard to diversion of charitable assets." 182 A.3d at 1074.

Pursuant to *New Foundations Inc.*, Section 5547(a) denotes that a nonprofit holds in "trust" only those assets or property that were "given, devised to, or . . . vested" in it from an outside source. 15 Pa.C.S. §5547(a). Or, phrased differently, a nonprofit holds assets or property in "trust" when the outside source "donated[,] granted, or devised" the assets or property to the nonprofit, 15 Pa.C.S. §5547(a), including when the outside source commits assets pursuant to an express trust.[13] The Comment to Section 7740.3 of the Trust Act is a replication of these principles, by referring to and including "charitable dispositions," such as gifts or donations, from an outside source to "charitable organizations" within the scope of its reach. 20 Pa.C.S. §7740.3, Comment. Ultimately, it is these types of assets, or, more precisely, the manner in which these assets are transferred and/or otherwise devoted to a nonprofit, that potentially renders them subject to the doctrine of *cy pres*.[14]

---

[13] *See* Section 5548(a), (d) of the Nonprofit Law, 15 Pa.C.S. §§5548(a) ("Unless otherwise specifically directed in the *trust instrument*, the board of directors or other body of a nonprofit corporation incorporated for charitable purposes shall have power to invest *any assets vested in the corporation by such instrument*," (emphasis added)), 5548(d) ("*This section shall apply to assets hereafter received pursuant to section 5547 (relating to authority to take and hold trust property)*, to assets heretofore so *received* and held at the time when this article takes effect," (emphasis added)); *see also* Section 5549(a) of the Nonprofit Law, 15 Pa.C.S. §5549(a) ("Any nonprofit corporation holding or *receiving assets under section 5547 (relating to authority to take and hold trust property)* may, by appropriate action of its board of directors or other body, transfer, which transfer may be either revocable or irrevocable, any such assets to a corporate trustee, which shall be a bank and trust company or a trust company incorporated under the laws of this Commonwealth or a national banking association," (emphasis added)). Section 5548 is entitled, "Investment of trust funds" while Section 5549 is entitled, "Transfer of trust or other assets to institutional trustee."

[14] This conclusion is further bolstered by Section 5550 of the Nonprofit Law, which requires the approval of an orphans' court under the Trust Law when a "devise, bequest or gift . . . in trust or otherwise, to or for a nonprofit corporation" effectively fails or is rendered inoperative for an **(Footnote continued on next page…)**

17

However, all other assets owned by a nonprofit, which do not fall within this general category, cannot be effectively seized and transferred to another nonprofit pursuant to the legal concept of *cy pres*, unless the nonprofit itself has taken its assets and created its own charitable trust for those assets,[15] or the Commonwealth secures involuntary dissolution of the nonprofit. Succinctly put, and contrary to the overall thrust of the Commonwealth's argument, a charitable nonprofit corporation is not synonymous with a charitable trust and the two are not one and the same.

Here, as explained above, the Commonwealth has taken an "all or nothing" approach to the property and assets of Independent, proceeding on the legal theory that everything that Independent owns is held in "trust," without exception, and as a matter of law. But our discussion above and decision in *New Foundations, Inc.* demonstrate that this proposition is simply incorrect. By its very nature, a fundamental prerequisite to application of the doctrine of *cy pres* is the existence of assets that are specifically placed into a trust, so that a trial court can designate a substituted beneficiary to receive those assets when the charitable purpose of the trust "becomes unlawful, impracticable or wasteful." 20 Pa.C.S. §7740.3. Without ascertaining with absolute certainty the identity of the assets that are placed in trust, a trial court is naturally precluded from applying the doctrine of *cy pres*. *Cf.*

---

**(continued…)**

enumerated legal reason before the nonprofit officially obtains a vested interest in the asset or property to be devised or bequeathed. 15 Pa.C.S. §5550.

[15] Notably, under Section 5501, "a nonprofit corporation shall have the legal capacity of natural persons to act," 15 Pa.C.S. §5501, including the power to establish "pension trusts" and "other . . . trusts," 15 Pa.C.S. §5502(a)(14), so long as they do not violate a statutory command or public policy. *See Borden v. Baldwin*, 281 A.2d 892, 896 & n.2 (Pa. 1971).

Restatement (Second) Trusts, §76, *cmt. a* (Am. Law Inst. 1959) (Restatement) ("A trust is not created if . . . the description of it is so indefinite that it cannot be ascertained.").[16]  In this case, the Commonwealth has not pinpointed any particular asset or property owned by Independent and did not establish an evidentiary connection that definitively links the source and/or financial basis through which Independent acquired that asset or property.  It was incumbent upon the Commonwealth to do so, though, in order to obtain relief under the doctrine of *cy pres*.

Therefore, we conclude that the Commonwealth failed to prove a basic precondition for application of *cy pres*, *i.e.*, identifying specific assets that were placed in "trust."  In failing to establish this essential predicate, the Commonwealth's claim for *cy pres* was fatally flawed and meritless from the inception, and the fact that the trial court found that Independent's charitable purpose has become "impracticable" is inconsequential or amounts to "negligence in the air, so to speak." *Palsgraf v. Long Island Railraod Co.*, 162 N.E. 99, 99 (N.Y. 1928).  This precept remains true even though Section 7740.3(e) of the Trust Act seems to strip equitable considerations from the legal matrix and states, in ostensibly mandatory language, that a trial court "shall apply *cy pres*" when there is such a finding.  20 Pa.C.S. §7740.3(e).  In other words, for purposes of seeking to transfer the assets from one nonprofit to another under the *cy pres* doctrine, it matters not that the Commonwealth may have proved "B" (the "impracticability" of the trust's purpose, a condition

---

[16] Comment a to Section 76 of the Restatement provides two illustrative examples where a trust instrument fails to properly identify the *res* that constitutes the trust:  "A declares himself trustee of 'the bulk of my securities' in trust for B.  No trust is created"; "A, the owner of Blackacre, purports to convey to B in trust for C 'a small part' of Blackacre.  No trust is created."  Restatement, *cmt a.*, Illustrations 1-2.

subsequent) when it did not prove "A" (that there were specific assets that have been placed in trust, a condition precedent). Having embraced the above-stated rationale to support our conclusion and disposition, we need not address the broader and more complicated issue of whether the Nonprofit Law and/or the Trust Law permit a trial court to apply the doctrine of *cy pres*, absent a claim for involuntary dissolution or a diversion of the nonprofit's assets.[17]

Accordingly, because the Commonwealth failed to establish a right to relief under the doctrine of *cy pres*, we affirm the trial court, albeit through alternative reasoning.

_____
PATRICIA A. McCULLOUGH, Judge

---

[17] In passing, we note the trial court's observation that "[s]ince decertification, Independent has reached out to local neighboring townships in an attempt to continue [its] firefighting mission, which seemed to be hindered by the present litigation." (Trial court op. at 3.) Therefore, it seems that Independent is in the process of pursing the opportunity to engage in firefighting activities in the future. During oral argument, the Court and parties discussed the possibility of Independent amending its articles of incorporation. *See* Sections 5911-5916 of the Nonprofit Law, 15 Pa.C.S. §§5911-5916.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Independent Fire Co. No. 1 | : | |
| a non profit corporation | : | No. 1489 C.D. 2018 |
| | : | |
| Appeal of: Commonwealth of | : | |
| Pennsylvania | : | |

## *ORDER*

AND NOW, this 5th day of February, 2020, the October 4, 2018 order of the Court of Common Pleas of Lycoming County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge