IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia          :
                              :
     v.                  :    No. 916 C.D. 2019
                              :    Submitted: June 12, 2020
Horizon House, Inc.,       :
              Appellant    :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON              FILED: July 10, 2020

Horizon House, Inc. (Owner) appeals from an order of the Philadelphia County Court of Common Pleas (Trial Court) imposing fines for violations of the City of Philadelphia (City) Code (Code), specifically the Property Maintenance (PM) Subcode,[1] *i.e.*, unsafe fire escape and cracked exterior wall. The City Department of Licenses & Inspections (Department) cited Owner for past and continuing violations and sought daily fines for the 14 months of the violation. The Trial Court reduced the fines to $40,000. Owner argues the Trial Court failed to properly apply the Fire Escape Ordinance (Phila. Code, §§F-1104.16.1-.16.7) and abused its discretion in issuing a $40,000 fine without considering compliance efforts. Owner seeks reversal of the Trial Court's order or, in the alternative, a reduction of the fine to $500 to reflect the purportedly *de minimis* nature of the violation. The Department counters that the citations underlying its equity action referred to the Property Maintenance Code, *not* the Fire Escape Ordinance. Discerning no error below, we affirm.

---

[1] Phila., Pa., Property Maintenance Subcode, §§101.1-904.2 (effective July 1, 2015).

# I. Background

Owner operated as a group home for disabled adults within a three-story, unattached masonry structure that is approximately 75 years old located at 4613 Chester Avenue, Philadelphia, Pennsylvania (Premises).

On June 28, 2016, the City enacted a new fire escape inspection ordinance requiring the inspection and repair of all fire escapes in the City. *See* Fire Escape Ordinance, Phila. Code, §§F-1104.16.1-.16.7. The ordinance requires periodic inspections of fire escapes and required all property owners to file their initial inspection reports by July 1, 2017. Phila. Code, §F-1104.16.5.1.2 & .3.

On October 21, 2017, Owner submitted an engineer's report regarding the compliance of the fire escape as required by the new ordinance (2017 Report). The 2017 Report identified a number of problems with the fire escape as follows:

- The platforms and stairs were "in poor condition" due to age, rust, and corrosion;
- Supporting brackets and anchor bolts for third floor platform had failed due to loose brickwork;
- Three corner brackets supporting the third-floor platform were structurally deficient;
- The steel supporting angle for the second floor platform had slipped out of position and was missing an anchor bolt;
- The second floor handrail was inadequately secured to the wall; and
- The foundation supporting a stairway post was "cracked and non-functional."

Supplemental Reproduced Record (S.R.R.) at 23b-24b. The engineer concluded that the fire escape was in "UNSAFE" condition and noted: "**Extensive repairs are**

2

**required**." S.R.R. at 23b (emphasis in original). As required by the ordinance, Owner transmitted this report to the City.

Based on the 2017 Report, on October 23, 2017, an inspector from the Department visited the property and issued a Notice of Violation (Notice) regarding the fire escape. Relevant here, the Notice cited violations of the Property Maintenance Code, Sections PM-304.1(7) and PM-304.1(11). S.R.R. at 14b-15b.

The Department deemed the fire escape "Unsafe" under PM Code Section PM-108.1, meaning the structure was "dangerous to the life, health, property or safety of the public or the occupants." S.R.R. at 14b. The Notice directed Owner to obtain a report from a licensed engineer and send that report to the Department, and to complete repairs in accordance with the engineer's recommendations. *Id.* Of importance, Owner did not appeal the Department's determination of these violations through the administrative process.

Owner secured a bid in June 2018, and on July 2, 2018, it hired a contractor to perform required repairs. That same day, the Department issued a Final Warning based on a re-inspection that found the violations (*i.e.*, fire escape and cracked concrete footer) were still unresolved. *See* S.R.R. at 17b-18b. The Final Warning again ordered Owner to obtain an engineer's report and complete repairs, and also ordered Owner to develop a plan and timeline for remediation. *Id.*

The City filed the instant action in equity in September 2018 seeking to remedy these violations of the Property Maintenance Code. S.R.R. at 1b-18b

3

(Complaint). In addition to seeking an injunction requiring Owner to immediately correct the violations, the City also sought: fines for past violations; accumulating fines for each day the violation remained uncorrected; and re-inspection fees.

In response to the Final Warning, Owner engaged a different engineer, and obtained a new summary inspection report regarding the condition of the fire escape in October 2018 (2018 Report). S.R.R. at 30b. This certified that all repairs to the *fire escape* were completed, and it was in "SAFE CONDITION," but did not state what (if any) repairs had been done. *Id.* However, there were no repairs to the exterior wall. *See* Final Warning (citing Phila. Code, PM-304.1(7), (11)).

The Trial Court held a hearing on October 25, 2018 and entered an order requiring specific steps toward compliance and imposing a fine (Order to Comply Violations, filed Oct. 25, 2018). Owner did not appear at this hearing. Initially, the Trial Court upheld a fine of $780,450.[2]

In November 2018, the City filed a praecipe to enter default judgment.[3] Shortly thereafter, counsel entered an appearance on Owner's behalf, and a second hearing was scheduled. In lieu of a hearing, the Trial Court entered an order of the parties' agreement to remediate the violations. S.R.R. at 19b-21b (Dec. 6, 2018 Order to Comply by Agreement). Therein, the parties stipulated that not all of the violations had been remediated. *See* S.R.R. at 19b ¶3. Owner also agreed to engage

---

[2] This fine was calculated, as follows: Class III Violation x $2,000 x 363 days = $726,000; plus Basic Violation x $150 x 363 days= $54,450. Trial Ct., Slip Op., 10/8/19, at 4.

[3] Ultimately, based on Owner's motion for reconsideration seeking to open the judgment for lack of service of process, the Trial Court struck the judgment. *See* Order filed Jan. 24, 2019.

4

an engineer to address the anchorage of the fire escape to the building and the fractured concrete footer and to provide a copy of that report to the Department.

Later that month, Owner repaired the cracked foundation and obtained a supplemental engineer's report dated December 18, 2018, that listed the items that had been repaired, including the wall attachment and cracked footing (Supplemental Report).

Inspector re-inspected the property on January 2, 2019, and confirmed the repair of the cracked foundation. Trial Ct., Hr'g Tr., 2/26/19, (Notes of Testimony (N.T.) at 23-24. Owner provided the Supplemental Report to Inspector in January 2019. As of January 8, 2019, the Department marked the case closed.

On February 26, 2019, the Trial Court held a hearing where both parties submitted evidence and presented witness testimony. Department inspector Tom Rybakowski (Inspector) testified on behalf of the City about the timeline of the violations, including the initial Notice in October 2017 and Final Warning in July 2018. He testified that the 2018 Report did not address the cracked concrete foundation of the support post and that the foundation was still damaged when he visited the Premises in November 2018. He confirmed the Department deemed that violation resolved as of January 8, 2019. N.T. at 25.

As to his re-inspection in November 2018, Inspector observed that most of the defects listed in the 2017 Report had been remedied, but the fractured concrete foundation supporting the fire escape had not been repaired. N.T. at 13-14, 22-23. Inspector's concern with the cracked foundation was that the 2017 Report deemed it

structurally unstable, plus the crack would allow water to penetrate into the foundation, causing further deterioration. N.T. at 19 ("The foundation supporting the first floor stair tee-beam and post is cracked and nonfunctional. This is a long stair span and the post is essential for structural integrity."); *see* S.R.R. at 23b.

Owner's manager (Manager) testified regarding the notices and repairs. He confirmed that Owner had not made any repairs between October 2017, when it received the Notice, and October 2018. N.T. at 41. He stated the company had difficulty finding a contractor that was willing to perform the repairs, and it took "several weeks" to receive the first bid, and the company needed to solicit multiple bids before choosing a contractor. N.T. at 39-40. The contractor selected to complete the work submitted a proposal on June 29, 2018, that he approved days later. Nonetheless, the contractor did not begin work until October 2018 because Owner had cash flow issues and could not make the initial payment. N.T. at 41.

On cross-examination, Manager admitted the contractor's proposal in July 2018 did not include repair to the cracked foundation, despite that the 2017 Report identified that concern. N.T. at 50-51. He testified that after learning of the cracked foundation in early December 2018, he engaged the same contractor to perform that repair, and it was completed later that month. N.T. at 43.

Based on the evidence and argument, the Trial Court entered a final order noting the Department deemed the violations complied as of January 8, 2019. Ruling from the bench, the Trial Court set an absolute fine of $40,000 despite that the City asked for the maximum fine under the Code. The Trial Court noted that

6

because Owner continued to house disabled residents at the Premises while the violations existed, it had a responsibility "to move on these repairs in a reasonable amount of time." N.T. at 59. It further stated: "[on] October 23, 2017 and July 2, 2018, the [Department] sent a [Notice] informing [Owner] of the existence of violations of Title 4 of The Philadelphia Code of General Ordinances at the [Premises]." Tr. Ct. Order 2/26/19. The Trial Court directed judgment in favor of the City.

Owner then filed the instant appeal of that order in the Superior Court, which transferred the appeal to this Court. Based on Owner's concise statement of errors complained of on appeal, the Trial Court issued its Pa. R.A.P. 1925(a) opinion.

## II. Discussion

On appeal,[4] Owner challenges whether it violated the Fire Escape Ordinance, disregarding the cited violations of the Property Maintenance Code. Owner maintains fines should not be imposed when a violation has been remedied. It also contends the $40,000 fine is unreasonable and seeks a reduction to $500 to reflect the minor nature of the violation.

The City emphasizes Owner's focus on the wrong Code provisions, and Owner's admitted noncompliance. It argues Owner's long-standing violations warranted judgment in its favor. The City also contends the fine was not manifestly unreasonable when the Premises was a home to 18 disabled people, and the unsafe conditions created a risk of serious injury or death for over one year.

---

[4] In an equitable action brought to enforce local building codes, this Court's review is limited to whether the trial court committed an error of law or abused its discretion. *Williams Twp. Bd. of Sup'rs v. Williams Twp. Emergency Co.*, 986 A.2d 914 (Pa. Cmwlth. 2009).

7

## A. Compliance/Code Violations

Significantly, Owner has not disputed the cited legal basis for the fine: namely, violations of the Property Maintenance Code.

Instead, Owner insists it complied with the Fire Escape Ordinance because property owners are not charged with a violation when they "commence work" to correct an unsafe condition, and Manager's calls to contractors satisfy that requirement.[5] Appellant's Br. at 14-16. However, Owner was cited for violations under the Property Maintenance Code, *not* the Fire Escape Ordinance. *See* S.R.R. at 14b-15b (Notice of Violation, citing PM-108.1, PM-304.1(7), (11)); 17b-18b (Final Warning, citing same). Also, the Trial Court's final order was based on the violations cited in the Notice, plus the basic, daily fines and the enhanced fine for the Class III "unsafe" designation under PM-108.1 available for those violations. Nowhere did the Trial Court mention violations of the Fire Escape Ordinance.

Notwithstanding that Owner did not brief the Property Maintenance Code violations that form the basis for the fines, we decline to deem its compliance argument waived under Pa. R.A.P. 2119 because its arguments are discernible.[6]

---

[5] Regardless, we reject Owner's argument that its search for a contractor manifested compliance with the Fire Escape Ordinance. Notably, since the 2017 Report designated the fire escape as "unsafe," it "requires prompt remedial action." Phila. Code, §F-1104.16.5.1. The ordinance demands that, *within 10 days* of notice of the unsafe condition, the owner "shall commence work to correct the condition, and work shall continue without interruption until the unsafe condition has been corrected." Phila. Code, §F-1104.16.5.1.9(2) (emphasis added). It is undisputed that Owner did not perform any work on the fire escape within 10 days of the 2017 Report. In fact, the record shows no repair work was done until a year later. In this context, "commencing work" meant repairs. Also, Owner conceded there is no evidence as to when its engineer or contractor commenced compliance efforts. *See* Appellant's Br. at 21.

[6] This Court may address an argument not properly briefed when the issue is capable of review. *See Spring Creek Mgmt., L.P. v. Dep't of Pub. Welfare*, 45 A.3d 474 (Pa. Cmwlth. 2012).

8

Owner concedes that it failed to exhaust its administrative remedies so the violations of the Property Maintenance Code set forth in the Notice and Final Warning are admitted. Because it did not appeal the Notice, it cannot now dispute the factual or legal basis for those violations. *See City of Phila. v. DY Props., LLC*, 223 A.3d 717 (Pa. Cmwlth. 2019) (failure to appeal Code violation results in deemed admission of violations); *see also City of Phila. v. Lindy*, 455 A.2d 278 (Pa. Cmwlth. 1983); *Gans v. City of Phila.*, 403 A.2d 168 (Pa. Cmwlth. 1979). Thus, Owner provided no basis to overturn the Trial Court's finding that it was in violation of the Property Maintenance Code for over 400 days. Trial Ct., Slip Op., 10/8/19, at 12-13.

Moreover, the record is clear that Owner did not attempt to repair the cracked foundation until December 2018, and did not provide a report showing the completion of repairs and certifying the building as safe until January 2019. As such, the record supports the Trial Court's conclusion that Owner violated the relevant Property Maintenance Code through December 2018, more than a full year after receiving the Notice (of Violation) in October 2017 and several months after receiving the Final Warning in July 2018. Thus, we discern no error by the Trial Court in entering judgment in the City's favor and enforcing Owner's compliance with the Property Maintenance Code.

### B. Abuse of Discretion/Fines

Owner's challenge to the amount of the fine is also largely based on the Fire Escape Ordinance, and therefore is inapposite. Nonetheless, Owner contends the Trial Court abused its discretion in issuing the $40,000 fine for the continuing violation. It seeks reduction of the fine to $500 as more proportional to the violation.

The City maintains the Trial Court acted well within its discretion in imposing a $40,000 fine as the fine was far lower than the authorized maximum under the Code. It posits the amount of the fine does not constitute an abuse of discretion given the duration of noncompliance at issue, particularly when the Code authorizes a fine of several hundred thousand dollars.

Section A-601 of the Code specifies penalties for Code violations. At the relevant time, Section A-601.1 of the Code provided:

> Any person who shall violate any provision of this [C]ode or the technical codes or regulations adopted thereunder; or who shall fail to comply with any order issued pursuant to any section thereof ... shall be subject to a fine of not less than $150.00 and not more than $300.00 for each offense.

Phila. Code, §A-601.1. In addition to these basic fines, the "unsafe" designation made the unstable fire escape a Class III violation, which is subject to both the $300 per day basic fine and a $2,000 per day enhanced fine. *See* Phila. Code, §§PM-108.1, A-601.1, 601.3, 601.4, & 1-109(3) (relating to Class III violations).

We examine the Trial Court's imposition of the fine under an abuse of discretion standard. The high standard of showing a reversible abuse of discretion is met only where "the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *DY Props.*, 223 A.3d at 724. "An abuse of discretion is not merely an error of judgment." *Id.*

10

In the instant case, there has been no suggestion of bias or ill will by the Trial Court. In our view, the Trial Court correctly applied the law and reached a reasonable decision based on Owner's admitted violations.

The record reflects that the Department issued the Notice on October 23, 2017, and the Final Warning on July 2, 2018, yet the violations remained open until January 8, 2019, a total of 442 days. As a continuing violation, daily fines were proper. *See* Phila. Code, §§1-109, A-601.4. The maximum fine allowed was $1,016,600 (442 days times $2,300 per day). Even just the basic fine was $132,600 (442 days times $300 per day). Thus, the Trial Court's $40,000 fine, a fraction of the legal maximum, was well within its discretion. *DY Props.*

These facts are similar to those in our recent decision, *DY Properties.* There the owner also admitted to Code violations by not appealing the notice of violation and then failed to correct the violations for eight months. Like the Trial Court here, the trial court in *DY Properties* ordered a fine below the maximum. We affirmed, reasoning that because the owner admitted the violations, and the fines were authorized by the Code, the fines were within the court's discretion. *Id.*

Imposing daily fines is also supported by applicable precedent. This Court has upheld similar and larger fines in code enforcement or zoning cases that, unlike this one, did not involve an imminent safety hazard. *See, e.g., E. Penn Twp. v. Troxell* (Pa. Cmwlth., No. 875 C.D. 2011, filed Apr. 5, 2012), 2012 WL 8681524 (unreported)[7] (upholding $500 per day, per violation fine, totaling $624,500, for

---

[7] We cite this case for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

parking commercial vehicles, raising pigs, storing junk, and impermissibly operating a trucking terminal); *City of Erie v. Freitus*, 681 A.2d 840 (Pa. Cmwlth. 1996) (upholding $100 per day fine, totaling $14,000, for operating scrapyard in violation of zoning ordinance); *Woodruff v. L. Southampton Twp.*, 516 A.2d 834 (Pa. Cmwlth. 1986) (upholding $100 per day fine, totaling $157,600, for operating junkyard in violation of zoning ordinance).

We reject Owner's claims that it complied "within days" by hiring a contractor to fix the fire escape to warrant a fine reduction. Appellant's Br. at 9, 11-12. First, its contention is contrary to the record, including the stipulated Order to Comply by Agreement, showing that the cracked foundation was not repaired until December 2018. *See* N.T. at 10, 63-64; S.R.R. at 19b-20b. Thus, Owner's claim that it remedied *all* of the violations in October 2018 disregards the evidence.

Aside from its noncompliance with the Property Maintenance Code in not repairing the footer, and contrary to its characterization, Owner did not *promptly* repair the fire escape. The record contradicts Owner's claim that the delay in repairing the fire escape was attributable to unavailability of a contractor; rather, Manager testified cash flow issues caused the delay. N.T. at 41. It was not manifestly unreasonable for the Trial Court to find that this excuse did not justify more than a year's delay in repairing or attempting to work with the Department to develop a timeline for repairs as directed by the Final Warning.

The fine was not manifestly unreasonable under the circumstances. The Trial Court found that Owner failed to repair the fire escape for over a year based on

12

competent evidence. Although Owner was on notice that the fire escape was unsafe and incapable of supporting necessary weight loads in October 2017, it neglected to conduct repairs until October 2018, and the concrete footer was not repaired until December 2018. The Premises' condition posed a genuine risk of serious injury, both due to a collapse of the structure and by depriving upper-floor residents of a means of egress during a fire. Given these facts, the ultimate fine was far less than the maximum called for under the Property Maintenance Code.

The goal behind the Property Maintenance Code's daily accruing fines is to motivate property owners to work diligently to remedy ongoing violations as quickly as possible. *Cf. Com. v. Church*, 522 A.2d 30, 34 (Pa. 1987) (purpose of a fine is "to punish violators and to deter future or continued violations") (citation omitted). In light of the serious safety risk posed by the unsecure fire escape and cracked exterior wall, and the significantly larger fine authorized by the Code, we discern no abuse of discretion by the Trial Court in imposing a fine of $40,000 here.

### III. Conclusion

For the foregoing reasons, we affirm the Trial Court's order.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia             :
                                   :
      v.                   :    No. 916 C.D. 2019
                                   :
Horizon House, Inc.,         :
                Appellant   :

# **O R D E R**

**AND NOW**, this 10th day of July 2020, the order of the Philadelphia County Court of Common Pleas is AFFIRMED.

_____
J. ANDREW CROMPTON, Judge